## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN

|  |  |  |
|---|---|---|
| BLUE PIPE STEEL CENTER CO., LTD., | : | |
| Plaintiff, | : | |
| v. | : | Court No. 21-00081 |
| UNITED STATES OF AMERICA; | : | |
| Defendant, | : | |
| WHEATLAND TUBE COMPANY and NUCOR TUBULAR PRODUCTS INC. | : | |
| Defendant-Intervenors. | : | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF BLUE PIPE'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Adams C. Lee
HARRIS BRICKEN & SLIWOSKI LLP
600 Stewart Street, Suite 1200
Seattle, WA 98101
(206) 224-5657

December 14, 2022

**Table of Contents**

I.   RULE 56.2 STATEMENT ...................................................................................... 1

II.  STATEMENT OF FACTS ..................................................................................... 2

III. JURISDICTION AND STANDARD OF REVIEW .............................................. 8

IV.  ARGUMENT ........................................................................................................ 8

   A.  CBP'S DETERMINATION OF BLUE PIPE'S EVASION IS INVALID NOW THAT DOC HAS DETERMINED THAT DUAL-STENCILED PIPE IS NOT WITHIN THE SCOPE OF THE AD ORDERS ............................................................................................................ 10

      1.  CBP's Determination that Blue Pipe's Dual-Stenciled Pipe Was Covered Merchandise Is Now Invalid ........................................................................ 11

        a)  CBP Lacked Authority to Determine that Blue Pipe's Dual-Stenciled Pipe Was Covered Merchandise ................................................................. 12

        b)  CBP Determination that Blue Pipe's Dual-Stenciled Pipe Was Covered Merchandise Was Wrong .......................................................................... 14

      2.  CBP's Determination that Blue Pipe Made Material False Statements Is Now Invalid ........................................................................................................... 16

      3.  CBP's Determination that Blue Pipe Evaded AD Requirements Is Now Invalid . 18

   B.  CBP'S DETERMINATION OF BLUE PIPE'S DUTY EVASION WAS BASED ON DOC'S ORIGINAL FINAL SCOPE RULING AND NOT ON ANY OTHER FACTORS ........................ 19

   C.  THE EFFECTIVE DATE OF CBP'S DUTY EVASION DETERMINATION FOR BLUE PIPE SHOULD NOT BE BEFORE THE INITIATION DATE OF COMMERCE'S SCOPE INQUIRY .... 22

V.   CONCLUSION .................................................................................................... 25

## Table of Authorities

**Cases**

*Ad Hoc Shrimp Trade Enforcement Committee v. United States*, Court No. 21-00129, Slip Op. 22-53 (CIT May 23, 2022) ........................................................................................8

*All One God Faith, Inc. v. United States*, Consol Ct. No. 20-00164, Slip Op. 22-96 (CIT Aug. 18, 2022)...................................................................................................................8

*Hoogovens Staal BV v. United States*, 93 F. Supp. 2d 1303, 1305 (CIT 2000) ...........................21

*Royal Business Machs. Inc. v. United States*, 507 F. Supp. 1007, 1014 n. 18 (CIT 1980) ...........13

*Saha Thai Steel Pipe Pub. Co., Ltd. v. United States*, 547 F. Supp. 3d 1278 (CIT 2021)... 7, 15-16

*Saha Thai Steel Pipe Pub. Co., Ltd. v. United States*, Ct. No. 20-00133, Slip Op. 22-99 (Aug. 25, 2022)....................................................................................................................7

*SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)...................................................................21

*Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) ...................................8

*Thai Pineapple Public Co., Ltd. v. United States*, 187 F.3d 1362, 1365 (Fed. Cir. 1999)......13, 24

*Wheatland Tube Co. v. United States*, 161 F. 3d 1365, 1371 (Fed. Cir. 1998) ............................15

*Xerox Corp. v. United States,* 289 F.3d 792, 794-95 (Fed. Cir. 2002)........................................13

**Statutes**

19 U.S.C. § 1517(a)(3) ...................................................................................................11

19 U.S.C. § 1517(a)(5)(A)....................................................................................11, 16, 18

19 U.S.C. § 1517(c)(1)(A)...........................................................................................8, 11

19 U.S.C. § 1517(g)(2) .....................................................................................................8

28 U.S.C. § 1581(c) ..........................................................................................................8

**Regulations**

19 C.F.R. § 165.1...................................................................................................11, 18

19 C.F.R. § 351.225(l)(3) ................................................................................................23

**Administrative Decisions**

*Circular Welded Carbon Steel Pipes and Tubes from Thailand*, 51 Fed. Reg. 8341 (Dep't Commerce Mar. 11, 1986)..........................................................................................3

*Circular Welded Carbon Steel Pipes and Tubes from Thailand: Notice of Court Decision Not in Harmony With Final Scope Ruling and Notice of Amended Final Scope Ruling Pursuant to Court Decision*, 87 Fed. Reg. 55,785 (Sep. 4, 2022). ...................................................7

## I.     RULE 56.2 STATEMENT

### A.     Administrative Determinations Sought to Be Reviewed

Plaintiff Blue Pipe Steel Center Co. Ltd. ("Plaintiff" or "Blue Pipe"), contests the

following determinations of the U.S. Customs and Border Protection ("CBP" or "Customs") in

the Enforce and Protect Act ("EAPA") investigation (EAPA Case Number 7401) on Blue Pipe's

imported merchandise that was allegedly covered by an antidumping duty order and entered

through evasion:

> (1) CBP's Trade Remedy Law Enforcement Directorate ("TRLED") Notice of Final
> Determination as to Evasion, September 11, 2020 ("*Sep. 11, 2020 Initial EAPA
> Determination*") (ECF #21 – Confidential Administrative Record ("CAR") – Doc.
> #72); ECF #20 – Public Administrative Record ("PAR") – Doc. #97);

> (2) CBP's Office of Trade Regulations & Rulings Administrative Review Determination
> of EAPA Case Number 7401 ("*Jan. 27, 2021 EAPA Review Determination*") (CAR –
> Doc. #73; PAR – Doc. #108).

### B.     Questions Presented and Summary of Argument

1. Whether CBP's determination that Blue Pipe had entered merchandise covered by an
   antidumping duty order into the United States through evasion was arbitrary and
   capricious, an abuse of discretion, and otherwise not in accordance with law.

Yes.  CBP's determination of Blue Pipe's duty evasion was an unlawful abuse of discretion and

not in accordance with law because CBP has no valid basis to support its determination that Blue

Pipe (1) entered "covered merchandise"; (2) made any "material false statements", or (3) evaded

applicable antidumping cash deposits or duties.  In light of DOC's amended Final Scope Ruling

that has determined that dual stenciled pipe is *not* within the scope of the AD Order, CBP no

longer has a valid basis for its duty evasion determination for Blue Pipe.  CBP's duty evasion

determination relied primarily on DOC's original Final Scope Ruling which incorrectly

determined that dual stenciled pipe was within the scope of the AD Order.  CBP has no

alternative basis to justify its duty evasion determination. Blue Pipe and Saha Thai had submitted

thousands of pages of documentation in response to CBP's EAPA questionnaires, but CBP did not cite to the vast majority of that record information and did not find any other support for an affirmative duty evasion determination.  CBP also specifically noted that certain information submitted by Petitioners were not relevant to the duty evasion determinations.

2. Whether CBP's determination that Blue Pipe's duty evasion should be applied to Blue Pipe's entries of dual-stenciled pipe that were made before the U.S. Department of Commerce ("DOC" or "Commerce") had even initiated its scope inquiry was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law.

Yes.  CBP's determination to apply its Blue Pipe duty evasion determination to entries made before November, 22, 2019, the initiation date of Commerce's scope inquiry of whether dual-stenciled pipe was within the scope of the AD Order, was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law. CBP exceeded its authority by not following the express instructions of Commerce's Scope Ruling.  CBP must follow the directions on antidumping instructions issued by Commerce, not only the determinations of what products are covered by the scope definition of an AD Order, but also when that scope ruling becomes effective.

## II.     STATEMENT OF FACTS

Plaintiff, Blue Pipe, was the importer of record of the merchandise subject to CBP's EAPA duty evasion investigation.  *Sep. 11, 2020 Initial EAPA Determination* at 2. Blue Pipe had imported certain dual-stenciled pipe that had been produced by Saha Thai Public Company Ltd. ("Saha Thai"). *Id.* Dual-stenciled pipe are pipe products that meet the standards of both American Society for Testing and Materials ("ASTM") A53, which is referred to as "standard pipe," and American Petroleum Institute ("API") 5L, which is certified as a type of "line pipe." *Id.*

Pursuant to the EAPA investigation, CBP determined that Blue Pipe's entries of dual stenciled pipe evaded the antidumping duty order on Certain Circular Welded Carbon Steel Pipes and Tubes from Thailand (A-549-502). *See, Circular Welded Carbon Steel Pipes and Tubes from Thailand*, 51 Fed. Reg. 8341 (Dep't Commerce Mar. 11, 1986) ("AD Order").

### CBP's EAPA Investigation

On October 4, 2019, domestic producers of circular welded carbon steel pipes and tubes, Independence Tube Corporation, Southland Tube Inc., and Wheatland Tube Company (collectively "Petitioners" or "the Allegers") filed an EAPA allegation with CBP.  Letter from the Allegers, "Circular Welded Carbon Steel Pipes and Tubes from Thailand: Request for an Investigation under the Enforce and Protect Act" (Oct. 4, 2019) ("EAPA Allegation") (CAR-Doc. #1; PAR Doc. #1).

On November 8, 2019, CBP initiated an EAPA investigation on Blue Pipe.  See, CBP Memorandum, "Initiation of Investigation for EAPA Case Number 7401 – Blue Pipe," dated November 8, 2019. (PAR – Doc. #6).  In its notice of initiation, CBP stated that the evidence in the EAPA Allegation reasonably suggested that Blue Pipe entered merchandise into the United States through evasion because Blue Pipe did not respond to the initial CF-28 and CBP solely relied on the information provided by Allegers. See, Notice of Initiation of Investigation taken as to Blue Pipe Steel Center Company Limited concerning evasion of the antidumping order on Certain Circular Welded Carbon Steel Pipes and Tubes from Thailand, dated February 13, 2020. (CAR – Doc. #18; PAR – Doc. #23).

After the initiation of the EAPA investigation, CBP chose six pipes imported by Blue Pipe and manufactured by Saha Thai for laboratory testing.  CBP noted that the testing results indicated that Blue Pipe's samples were in fact dual stenciled pipe and consistent with the

requirements for ASTM A53 Grade A (standard pipe) and API 5L PSL1 Pipe Grade A (line

pipe). *Sep. 11, 2020 Initial EAPA Determination* at 4; (CAR – Doc. #5-15, 64-69; PAR – Doc.

#8-14; 87-92).

In the EAPA investigation, CBP sent requests for information and supplemental requests

for information to Blue Pipe and the producer of the merchandise under investigation, Saha Thai.

See, Feb. 26, 2020 Blue Pipe RFI questionnaire (CAR- Doc. #19; PAR – Doc. #24); Feb. 27,

2020 Saha Thai RFI questionnaire (CAR – Doc. 20; PAR – Doc. #25); May 20, 2020 Blue Pipe

and Saha Thai RFI supplemental questionnaires (CAR – Doc. #40, 41; PAR – Doc. #55, 56).

Blue Pipe and Saha Thai fully cooperated with all of CBP's requests in the EAPA investigation.

Blue Pipe submitted its responses on April 24, 2020 (CAR – Doc. #37, 21-29, 36; PAR – Doc.

#51, 36-43, 50) and June 3, 2020 (CAR – Doc. #41-61; PAR – Doc. #65-73).  Additionally, Saha

Thai submitted their responses on May 4, 2020 (CAR – Doc. #30-35) and June 3, 2020 (CAR –

Doc. #39-40; PAR – Doc. #64).  Sep. 11, 2020 Initial EAPA Determination at 4.

Blue Pipe and Saha Thai responded fully to CBP's request for documentation, with each

submitting thousands and thousands of pages in their respective responses.  Blue Pipe and Saha

Thai both explained why they were not affiliated with each other and provided supporting

documentation including their respective shareholder lists, organization charts, financial

statements, and certification documents. Blue Pipe and Saha Thai submitted extensive

documentation regarding their respective pipe shipments to the United States.  In the initial

questionnaire response alone, Blue Pipe submitted documentation for more than twenty sales

trace packages that fully documented each U.S. import entry transactions from start to finish

including correspondence with customers, purchase orders, sales invoices, packing lists, bills of

lading, API certifications, mill test certificates, U.S. import entry declarations, and customer payment records. *See, e.g., April, 24, 2020 Blue Pipe RFI Response,* Appendix E.

### CBP's Sep. 11, 2020 Initial EAPA Determination

On September 11, 2020, CBP's Trade Remedy & Law Enforcement Directorate ("TRLED") issued a Notice of Final Determination as to Evasion.  *Sep. 11, 2020 Initial EAPA Determination* (CAR – Doc. #72; PAR – Doc. #97). CBP determined that Blue Pipe entered covered merchandise by means of false statements to CBP when Blue Pipe declared entries of dual stenciled line pipe as Type 01 entries.  CBP noted that Blue Pipe was mistaken when it believed those entries of dual stenciled pipe were not covered by the scope of the AD order and should have declared these entries as Type 03 entries, subject to AD cash deposits.  CBP noted that DOC's scope ruling issued on June 30, 2020 confirmed that dual stenciled line pipe was subject to the AD order.  Although CBP had initiated its EAPA investigation in November 2019 and issued questionnaires and review Blue Pipe's and Saha Thai's questionnaire responses submitted between April and June 2020, CBP ultimately relied primarily on DOC's June 30, 2020 scope ruling that was issued just a few months before CBP's *Sep. 11, 2020 Initial EAPA Determination.*

### CBP's Jan. 27, 2021 Review EAPA Determination

On January 27, 2021, pursuant to a request for administrative review of the *Sep. 11, 2020 Initial EAPA Determination*, CBP's Office of Trade Regulations & Rulings issued a determination that affirmed the *Sep. 11, 2020 Initial EAPA Determination* that there was substantial evidence that Blue Pipe had evaded the deposit of antidumping duties by entering

covered merchandise by means of material and false statements. *Jan. 27, 2021 EAPA Review Determination* (CAR – Doc. #73; PAR – Doc. #108).

CBP's review summarized the record evidence submitted in Petitioner's EAPA allegation.  CBP, however, specifically noted that much of Petitioner's submitted evidence was not necessary and was not the basis for CBP's conclusions of Blue Pipe's duty evasion.  For example, CBP noted that the issue of whether Blue Pipe and Saha Thai were affiliated was "not a factor in our ultimate conclusion in this administrative review." *Jan. 27, 2021 EAPA Review Determination* at 12.  CBP also noted that, since the issue of good faith or intent was not generally germane to an EAPA investigation, CBP did not rely on the timing of the imports in question or the shifts in patterns of trade between Saha Thai and Blue pipe as a basis for its evasion determination. *Id.* at 12-13.

CBP explained that EAPA lacks a knowledge requirement in the definition for evasion. *Id.* at 13. CBP noted that DOC's Final Scope Ruling confirmed that Blue Pipe's dual stenciled pipe entries fell under the AD Order.  CBP determined that, regardless of Blue Pipe's good faith belief that dual stenciled pipe was outside the scope of the AD Order, Blue Pipe should have entered the dual stenciled pipe as Type 03 entries.  Blue Pipe's failure to do so was enough for CBP to determine that the record contained substantial evidence that Blue Pipe evaded the AD order.

.    ***DOC's Scope Ruling and Subsequent CIT Litigation***

On November 22, 2019, DOC self-initiated a scope inquiry into AD Order.  Saha Thai consistently asserted that its dual stenciled line pipe was not standard pipes with minor alternations and that dual stenciled line pipe was outside the scope of the AD Order.  On June 30,

2020, DOC issued its final scope ruling that found that dual-stenciled pipe was within the scope of the AD Order ("DOC Final Scope Ruling").

Saha Thai filed an appeal with this Court to challenge DOC's Final Scope Ruling.  On October 6, 2021, this Court issued a decision that found that "Commerce's determination that dual-stenciled pipe is covered by the Thailand Order [wa]s not supported by substantial evidence … [and] that Commerce's Final Scope Ruling constituted an unlawful expansion of the scope of the underlying order."  *Saha Thai Steel Pipe Pub. Co., Ltd. v. United States*, 547 F. Supp. 3d 1278 (CIT 2021) ("*Saha Thai I*").

Pursuant to this Court's remand order, on April 22, 2022, DOC issued its remand determination in which it reconsidered its scope ruling and concluded, under respectful protest, that dual-stenciled standard pipe and line pipe is outside the scope of the AD order.  *DOC Amended Final Results of Redetermination Pursuant to Court Remand, Saha Thai Steel Pipe Public Co., Ltd. v. United States, Court No. 1:20-cv-133, Slip Op. 21-135 (CIT October 6, 2021)* at 1-2.

On August 25, 2022, this Court sustained Commerce's remand redetermination. *Saha Thai Steel Pipe Pub. Co., Ltd. v. United States*, Ct. No. 20-00133, Slip Op. 22-99 (Aug. 25, 2022) ("*Saha Thai II*").

On September 4, 2022, Commerce published its *Timken Notice* acknowledging that the Court had issued a conclusive and final decision that was not in harmony with the Department's original final scope ruling and determined that the scope definition of the AD order does not cover dual-stenciled standard pipe and line pipe.  *Circular Welded Carbon Steel Pipes and Tubes from Thailand: Notice of Court Decision Not in Harmony With Final Scope Ruling and Notice of Amended Final Scope Ruling Pursuant to Court Decision*, 87 Fed. Reg. 55,785 (Sep. 4, 2022).

On September 7, 2022, Wheatland Tube Company filed an appeal with the U.S. Court of Appeals for the Federal Circuit to challenge the CIT's decisions in *Saha Thai*.

## III.    JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction pursuant to section 517 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1517(g), and 28 U.S.C. § 1581(c), which grant the Court with jurisdiction over actions contesting CBP's determinations of evasion pursuant to the EAPA statute.

In reviewing CBP's evasion determinations, the Court must determine whether CBP fully complied with all procedures under 19 U.S.C. §§ 1517(c) and (f).  The statute directs this Court to hold as unlawful "any determination, finding, or conclusion [that] is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1517(c)(1)(A); 19 U.S.C. § 1517(g)(2). CBP's determination of whether an importer evaded antidumping duties must be supported by substantial evidence on the record.  *Ad Hoc Shrimp Trade Enforcement Committee v. United States*, Court No. 21-00129, Slip Op. 22-53 (CIT May 23, 2022) at 12 (citing 19 U.S.C. § 1517(c)(1)(A). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *All One God Faith, Inc. v. United States*, Consol. Ct. No. 20-00164, Slip Op. 22-96 (CIT Aug. 18, 2022) at 13 (quoting *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).

## IV.    ARGUMENT

We respectfully request that this Court find that CBP's EAPA determinations that Blue Pipe entered merchandise covered by the AD Order into the United States through evasion were

an abuse of discretion because its decisions were not supported by substantial evidence and were not in accordance with law.

CBP's EAPA determinations of Blue Pipe's duty evasion relies heavily on DOC's Final Scope Ruling that originally concluded that dual-stenciled pipe was included within the scope of the AD Order.  CBP's reliance on DOC's Final Scope Ruling is significant for purposes of this Court's review for two reasons.  First, Commerce has amended its Final Scope Ruling pursuant to the litigation before this Court in *Saha Thai I and II* and now has concluded that dual-stenciled pipe is *not* included within the scope of the AD Order.  Second, CBP chose not only to rely on DOC's Final Scope Ruling as the primary basis for its determinations but also chose to disregard the thousands of pages of narrative responses and supporting documentation submitted by Blue Pipe and Saha Thai.  CBP also affirmatively noted that certain information submitted by Petitioners were not relevant and were not the basis for their duty evasion determinations.

The change in Commerce's position on dual-stenciled pipe fatally undermines the legitimacy of CBP's EAPA determinations.  Not only has the primary basis for CBP's duty evasion determinations been invalidated as a result of the *Saha Thai* litigation, CBP also chose to not offer any other alternative justification for its duty evasion determinations based on the record evidence presented in its investigation.  This Court's review of CBP's duty evasion determinations should be based on the rationale presented in CBP's determinations, not by any *post hoc* attempt to salvage its determinations.

A.     **CBP's Determination of Blue Pipe's Evasion Is Invalid Now that DOC Has Determined that Dual-Stenciled Pipe Is Not Within the Scope of the AD Orders**

In light of DOC's amended Final Scope Ruling that dual-stenciled pipe is not within the scope of the AD Order, CBP's determinations now fail to satisfy three statutory requirements necessary for an affirmative EAPA duty evasion determination.

First, Blue Pipe's dual stenciled pipe was not "merchandise covered" by the AD Order. Pursuant to the CIT's decisions in *Saha Thai*, Commerce changed its determination from the original final scope ruling and now has determined that dual-stenciled pipe is not included within the scope of the AD Order.  CBP can no longer lawfully assert that Blue Pipe's dual-stenciled pipe was covered merchandise in light of the amended DOC Final Scope Ruling.

Second, Blue Pipe did not make any material or false statement when it declared those import entries of dual stenciled pipe as Type 01 entries, because Blue Pipe's dual-stenciled pipe are not within the scope of the merchandise covered by the AD order. CBP even selected six of Blue Pipe's import entries of the pipes manufactured by Saha Thai for laboratory testing. CBP's testing results confirmed that Blue Pipe's samples were in fact dual stenciled pipe and consistent with the requirements for ASTM A53 Grade A and API 5L PSL1 Pipe Grade A. *Sep. 11, 2020 Initial EAPA Determination* at 4; (CAR – Doc. #5-15, 64-69; PAR – Doc. #8-14; 87-92). Thus, CBP cannot lawfully assert that Blue Pipe's customs entry declarations included any material false statements.  CBP has no basis to conclude that Blue Pipe should have declared its entries of dual-stenciled pipe as Type 03 entries subject to AD cash deposit requirements, when Commerce has now determined that dual-stenciled pipe are not and have never been subject to the AD Order.

Third, Blue Pipe did not evade any antidumping duty requirements.  Because Blue Pipe's dual-stenciled pipe was not covered merchandise and because Blue Pipe did not make any

10

material false statement on its import entry declarations for dual-stenciled pipe, Blue Pipe did not

take any action that resulted in any cash deposit or other security or any amount of applicable

antidumping duties being reduced or not being applied to the dual-stenciled pipe.  Blue Pipe did

not evade any antidumping duty requirements because Commerce has determined that dual-

stenciled pipe are not subject to the AD Order so that Blue Pipe was never obligated to pay any

antidumping duty deposits on its entries of dual-stenciled pipe.

### 1.    CBP's Determination that Blue Pipe's Dual-Stenciled Pipe Was Covered Merchandise Is Now Invalid

The EAPA statute does not permit CBP to include merchandise not covered by the scope

of an antidumping duty order.  19 U.S.C. § 1517(c)(1)(A).  Only merchandise covered by an

antidumping order may be included in an EAPA investigation of possible evasion.  19 U.S.C. §

1517(a)(3), (a)(5)(A).  Covered merchandise is defined as "merchandise that is subject to … an

AD order issued under section 736, Tariff Act of 1930, as amended (19 U.S.C. 1673e)."  19

U.S.C. § 1517(a)(3); 19 C.F.R. § 165.1.

Both CBP's *Sep. 11, 2020 Initial EAPA Determination* and CBP's *Jan. 27, 2021 EAPA*

*Review Determination* relied on Commerce's June 30, 2020 Final Scope Ruling that found that

dual stenciled pipe was within the scope of the AD order.  "Commerce's scope ruling confirms

that dual stenciled line pipe from Thailand falls under the scope of the order."  *Sep. 11, 2020*

*Initial EAPA Determination* at 7.  "[A]lthough Commerce's June 2020 final scope ruling found

that 'line pipe' is not subject to the AD Order, it confirmed that dual stenciled line pipe from

Thailand does fall within the AD Order's scope."  *Jan. 27, 2021 EAPA Review Determination* at

13.

Commerce's Final Scope Ruling, however, has been amended pursuant to this Court's

review in *Saha Thai* in which this Court found that Commerce had unlawfully expanded the

scope of the AD Order to include dual-stenciled pipe.  Ultimately, Commerce in its remand determination amended its Final Scope Ruling and has now concluded that dual-stenciled pipe is not within the scope of the AD Order.  Regardless of either Commerce amending its Final Scope Ruling under protest or Wheatland Tube filing an appeal to the Federal Circuit of this Court's decisions in *Saha Thai*, the bottom line is that Commerce now has determined that dual-stenciled pipe is not covered by the scope of the AD Order.  Without the support of Commerce's original Final Scope Ruling, CBP now has no valid basis to support its determination that Blue Pipe's dual-stenciled pipe was covered merchandise now that Commerce has ruled that dual-stenciled pipe is not subject to the AD Order.

### a) CBP Lacked Authority to Determine that Blue Pipe's Dual-Stenciled Pipe Was Covered Merchandise

CBP's determination that Blue Pipe's dual stenciled pipe was covered merchandise consistently cited Commerce's Final Scope Ruling as confirming that dual stenciled pipe was within the scope of the AD Order.  However,  in CBP's *Jan. 27, 2021 EAPA Review Determination*, CBP included a section in which it noted that "even without the confirmation by Commerce, TRLED correctly found that the pipe entries which were subject to the EAPA investigation, because they met the specifications for standard pipe, were covered by the AD Order and should have been declared as Type 03 entries, for which AD duty deposits should have been made."  *Jan. 27, 2021 EAPA Review Determination* at 14.

This statement suggests that CBP believed that, even without referral to Commerce's Final Scope Ruling, it would have determined on its own that Blue Pipe's dual stenciled pipe was covered merchandise.  However, we respectfully submit that CBP did not have the authority to determine independently from Commerce whether dual stenciled pipe was within the scope of the AD Order.

It is well established that "Commerce is the 'master of the antidumping law.'" *Thai Pineapple Public Co., Ltd. v. United States*, 187 F.3d 1362, 1365 (Fed. Cir. 1999). Decisions of whether goods are subject to an antidumping duty order are made by Commerce, and CBP's role is to follow Commerce's directions. CBP only has a ministerial role in collecting deposits, liquidating and assessing final antidumping duties, and "may not independently modify, directly or indirectly the determinations {made by Commerce}, their underlying facts, or their enforcement." *Royal Business Machs. Inc. v. United States*, 507 F. Supp. 1007, 1014 n. 18 (CIT 1980). The Federal Circuit has held that only Commerce has the authority to determine whether specific merchandise is subject to an antidumping or countervailing duty order. *Xerox Corp. v. United States*, 289 F.3d 792, 794-95 (Fed. Cir. 2002). CBP's authority is limited to making "the factual findings to ascertain what the merchandise is and whether it is described in an {antidumping duty} order," *Id.*

Here, CBP appears to overstep its authority in asserting that it need not defer to Commerce's determinations as to whether certain products (i.e., dual-stenciled pipe) are included or excluded from the scope of the AD Order. CBP may have the authority to review the documentation submitted with Blue Pipe's entries and conduct laboratory tests and to determine that the pipes did in fact meet the specifications of both standard pipe (ASTM A53) and line pipe (API 5L). CBP, however, did not have the authority to determine that "because the pipe at issue clearly met the specifications for standard pipe, it fit within the AD Order's language and scope." *Jan. 27, 2021 EAPA Review Determination* at 14. CBP was beyond its responsibilities in also concluding that "[t]he fact that it may also have met the specifications for line pipe did not mean that it was somehow no longer standard pipe." *Id.* The decision on whether such pipe that meets

both specifications for standard pipe and line pipe are included within the scope of the AD Order could only be made by Commerce, and not by CBP.

CBP has no authority to determine on its own whether dual stenciled pipe is included within the scope of the AD order. CBP's determination of whether dual stenciled pipe is covered merchandise for purposes of its EAPA duty evasion determination must defer and follow the scope decision made by Commerce. Now that Commerce has amended its Final Scope Ruling and has determined that dual stenciled pipe is not included in the scope of the AD Order, CBP must abide by and follow Commerce's amended Final Scope Ruling. CBP has no authority to rely on its independent interpretation of the scope definition of the AD Order that is inconsistent with Commerce's amended Final Scope Ruling. As such, CBP now must act as directed by Commerce's amended Final Scope Ruling and must conclude that Blue Pipe's dual stenciled pipe is not covered merchandise. If Blue Pipe did not enter any covered merchandise, then CBP must issue a negative duty evasion determination for Blue Pipe.

**b)** **CBP Determination that Blue Pipe's Dual-Stenciled Pipe Was Covered Merchandise Was Wrong**

Moreover, not only did CBP lack authority to determine whether dual stenciled pipe was included in the scope of the AD Order, CBP's scope analysis was also wrong. This Court in *Saha Thai* has already provided a thorough analysis of why dual-stenciled pipe is not included in the scope of the AD Order and addressed arguments raised by Commerce and Petitioners. Even if CBP did not rely on Commerce's Scope Ruling and instead relied solely on its own analysis of whether Blue Pipe's dual stenciled pipe fell within the scope definition of the AD Order, CBP's interpretation of the scope language is just as wrong as Commerce's scope ruling was. The Court's scope analysis in the *Saha Thai* decisions is equally applicable in demonstrating why CBP's analysis of Blue Pipe's dual-stenciled pipe was incorrect.

For example, this Court in *Saha Thai* explained why Commerce's analysis of the text of the scope was flawed because it looked at only one-third of the scope and focused only on the language about the size and diameter specifications for standard pipe without considering the rest of the scope definition. *Saha Thai I*, 547 F. Supp. 3d at 1293-94 ("the scope applies not simply to circular welded pipes with a give size or shape, but rather circular welded pipes that meet the industry standards and specifications required for those pipes to qualify as "standard pipes" *and* are referred to by the industry as "standard pipes" in common usage.").

CBP's analysis of Blue Pipe's dual stenciled pipe similarly focused on a limited reading of only part of the scope definition. CBP stated that because Blue Pipe's dual stenciled pipe met the specifications for standard pipe as set forth by the language of the scope definition, this was the only dispositive factor. *Jan. 27, 2021 EAPA Review Determination* at 14. CBP, like Commerce, failed to acknowledge that the scope definition also included language that required the subject merchandise to not only meet the physical size and shape specifications and industry standards, but also must be referred to by the industry as "standard pipe."

CBP never considered the (k)(1) factors addressed in this Court's consideration of whether dual-stenciled pipe was covered by the AD Order in *Saha Thai*. *Saha Thai I* at 547 F. Supp. 3d at 1294-98. Among the factors this Court noted in explaining why dual-stenciled pipe was not included in the scope of the AD order was the fact that petitioners in the original investigation had explicitly withdrawn from its petition scope definition the tariff item numbers under which dual-stenciled pipe would have been imported. This amendment to the scope language resulted in the ITC never conducting an injury analysis of subject merchandise that included dual-stenciled pipe imported as line pipe. *Saha Thai I*, 547 F. Supp. 3d at 1295-96 (citing *Wheatland Tube Co. v. United States*, 161 F. 3d 1365, 1371 (Fed. Cir. 1998) ("Commerce

cannot 'assess antidumping duties on products intentionally omitted from the ITC's injury investigation.'")).

The CIT also noted that for over thirty-five years from 1985 to 2020, there was no record evidence of dual-stenciled pipe ever being considered as standard pipe, and that the ITC even treated dual-stenciled pipe as line pipe in its sunset reviews. *Saha Thai I*, 547 F. Supp. 3d at 1297-98. The absence of any evidence that dual stenciled pipe has ever been considered as standard pipe supported the CIT's conclusion that Commerce's original Final Scope Ruling that "constitute[d] an unlawful expansion of the scope of the underlying order." *Saha Thai I*, 547 F. Supp. 3d at 1278.

Even if CBP had the authority to interpret the scope language of the AD Order to determine if Blue Pipe's dual stenciled pipe was included in the scope definition, CBP's analysis of this scope definition, like Commerce's, was wrong for all the reasons set forth in the *Saha Thai* decisions. CBP improperly focused on just the part of the scope language on the specifications for standard pipe, but failed to acknowledge the other parts of the scope definition that also required that the pipe be referred to in the industry as "standard pipe." Just as Commerce was incorrect in determining that dual stenciled pipe was within the scope of the AD order, CBP in this EAPA case was incorrect in determining that Blue Pipe's dual stenciled pipe was covered merchandise.

**2.    CBP's Determination that Blue Pipe Made Material False Statements Is Now Invalid**

The statute requires CBP to make a determination that Blue Pipe entered covered merchandise by means of a material and false statement or a material omission. 19 U.S.C. § 1517(a)(5)(A). CBP in its Initial EAPA determination found that "Blue Pipe made false statements to CBP when it claimed its entries as Type 01 entries." *Sep. 11, 2020 Initial EAPA*

*Determination* at 7.  CBP in its Review Determination found that Blue Pipe's declaration of its

dual-stenciled pipe entries as Type 01 "was false because dual stenciled products are covered by

the AD Order." *Jan. 27, 2021 EAPA Review Determination* at 15. Aside from Blue Pipe's entry

declarations, CBP does not cite to any other document or electronically transmitted data or

information, written or oral statement or act or omission of Blue Pipe that was material and false.

CBP itself confirmed through testing and extensive documentation provided by Blue Pipe

and Saha Thai in their questionnaire responses that the merchandise entered was dual stenciled

pipes. The record evidence of mill test certificates, invoices, purchase orders and Saha Thai's

API certification all confirm that Blue Pipe's imported products were in fact line pipe as stated

on its entry documentation. Furthermore, a comparison between the API standards and the

products imported to the United States during the investigatory period proved that the

merchandise met API 5L standards for line pipe. CBP chose six pipes that were manufactured by

Saha Thai for laboratory testing. CBP's lab test results found that all six pipes met the industry

specifications for both standard pipe and line pipe as declared on the entry documents. See, *Sep.

11, 2020 Initial EAPA Determination* at 4. Therefore, no false statements were made by Blue

Pipe throughout its importation of merchandise as to the description of the merchandise as

submitted on the Customs entry declaration.

CBP's conclusions regarding Blue Pipe making a material false statement focus on

whether the entries should have been declared as Type 01 (as declared by Blue Pipe) or as Type

03 entries subject to antidumping duty requirements.  On this issue, CBP again relies primarily

upon Commerce's Final Scope Ruling that originally determined that dual-stenciled pipe was

included in the scope of the AD Order.  However, now that Commerce has amended its Final

Scope Ruling pursuant to the *Saha Thai* litigation and now has determined that dual-stenciled

pipe is not included in the scope of the AD Order, CBP no longer has any valid support for its determination that Blue Pipe made material false statements in its entry declarations as to the entry type that should have been reported.  Commerce's amended Final Scope Ruling confirms that Blue Pipe was correct in submitting its entry declarations for its imports of dual stenciled pipe as Type 01 entries. Blue Pipe cannot be faulted for making *any* false statements when it correctly treated dual stenciled pipe as non-subject merchandise on its entry declarations. Because Blue Pipe's entry declarations were correctly filed and CBP has no other record evidence of Blue Pipe making any other type of material false statements, CBP cannot justify this statutory criterion necessary to make a duty evasion determination.

### 3.    CBP's Determination that Blue Pipe Evaded AD Requirements Is Now Invalid

The statute requires CBP to make a determination that Blue Pipe evaded antidumping requirements such as avoiding or reducing the payment of antidumping cash deposits.  19 U.S.C. § 1517(a)(5)(A). 19 C.F.R. § 165.1.

CBP's determination that Blue Pipe evaded payment of antidumping cash deposits was premised on Commerce Final Scope Ruling that dual-stenciled pipe was subject to the AD Order and that Blue Pipe failed to pay antidumping duty cash deposits on its entries of dual stenciled line pipe.  CBP in its Initial EAPA determination found that "Blue Pipe did not declare that the merchandise was subject to an AD Order upon entry, and as a result, the requisite cash deposits were not collected on the merchandise." *Sep. 11, 2020 Initial EAPA Determination* at 7.  CBP in its Review Determination found that Blue Pipe, "regardless of intention, should have entered the dual stenciled pipe as Type 03, and should have posted the appropriate cash deposits." *Jan. 27, 2021 EAPA Review Determination* at 13.

However, CBP's determination that Blue Pipe should have paid antidumping cash deposits on its entries of dual stenciled line pipe can no longer be sustained in light of Commerce's amended Final Scope Ruling that now finds that dual stenciled pipe is not covered by the AD Order.  Because Blue Pipe was not required to pay antidumping duties on non-subject dual stenciled line pipe, CBP cannot satisfy this statutory requirement that the importer be found to have evaded applicable antidumping duties.

In sum, CBP's determinations that Blue Pipe evaded the deposit of antidumping duties by entering covered merchandise by means of material and false statements has been completely invalidated by Commerce amending its Final Scope Ruling pursuant to the *Saha Thai* litigation before this Court.  Because Commerce in its amended Final Scope Ruling now has determined that dual stenciled pipe was not included within the scope of the AD Order, CBP is now unable to point to any evidence, let alone substantial evidence, to satisfy the statutory requirements necessary for CBP to make an affirmative EAPA duty evasion determination.  CBP cannot demonstrate that Blue Pipe (1) entered covered merchandise, (2) made any material false statements, or (3) evaded payment of any applicable antidumping duties.  Accordingly, we respectfully request that this Court find that CBP's EAPA determinations were an abuse of discretion and were not in accordance with law.

**B.      CBP's Determination of Blue Pipe's Duty Evasion Was Based on DOC's Original Final Scope Ruling and Not On Any Other Factors**

It is noteworthy that CBP's determinations relied so heavily on DOC's original Final Scope Ruling because CBP's determinations essentially ignored most of the record evidence consisting of a significant amount of information submitted mostly by Blue Pipe and Saha Thai, but also by the allegers, Independence Tube Corporation, Southland Tube, Inc., and Wheatland

Tube Company (jointly "Petitioners").  Although Petitioners' allegation and Blue Pipe's and Saha Thai's questionnaire responses accounted for the vast majority of the record evidence submitted in CBP's EAPA investigation, very little of that record information was cited and relied upon by CBP in making its determination on Blue Pipe's evasion. Blue Pipe and Saha Thai submitted thousands of pages of narrative responses and supporting documentation in response to CBP's exhaustive questions during the EAPA investigation.  Blue Pipe and Saha Thai submitted many sales trace packages fully documenting individual sales transactions from start to finish, including customer correspondence, purchase orders, sales invoices, mill certificates, API certificates, shipping documents, customs entry documents, payment records, etc.  CBP could find nothing in all of these pages of Blue Pipe's and Saha Thai's responses that was worth citing in support of its affirmative duty evasion determinations.

Instead, CBP relied upon Commerce's original Final Scope Ruling that dual stenciled pipe was included in the scope as the lynchpin justification for every statutory requirement of its duty evasion determinations for Blue Pipe.  As noted above, Commerce has amended its Final Scope Ruling pursuant to the decisions of this Court in *Saha Thai I and II* and now has determined that dual stenciled pipe is not included in the scope of the AD Order.  CBP's duty evasion determination can no longer rely on an invalidated Final Scope Ruling.

In addition to not citing to most of Blue Pipe's and Saha Thai's submitted response information, CBP also specifically addressed how information related to some of the allegations raised in Petitioners' EAPA Allegation were not relevant to CBP's determination.  For example, Petitioners submitted information to support its argument that the timing of Blue Pipe's and Saha Thai's imports of pipe products and the shift in how those entries were declared was indicative of Blue Pipe's duty evasion.  Although CBP acknowledged and discussed this information

20

submitted by Petitioners, CBP specifically stated that such "information is not necessary to, and is not the basis for, our conclusion in this administrative review." *Jan. 27, 2021 CBP Review Determination* at 11.  Although CBP noted that the history of importation of Saha Thai-manufactured pipe and the shift in how such merchandise was declared in U.S. Customs entries undercut Blue Pipe's arguments as to the lack of intent to evade, CBP stated that "since the issue of good faith or intent is not generally germane to an EAPA investigation, this administrative review determination finding evasion does not rely on the timing of the imports in question or the shifts in patterns of trade." *Jan. 27, 2021 CBP Review Determination* at 12-13.

CBP thus affirmatively determined that the record evidence highlighted by Petitioners of the shifts in how Saha Thai's pipe had been declared by Saha Thai and by Blue Pipe over time was not relevant and was not the basis for its duty evasion determination. Now that Commerce has amended its Final Scope Ruling, it would be inappropriate for CBP during this appeal to now change its mind and consider the timing and shifts in the importation of pipe products by Blue Pipe and Saha Thai to be relevant to its duty evasion analysis.

By affirmatively declaring these issues and arguments to be irrelevant to their analysis and determination of Blue Pipe's duty evasion, CBP waived its right to now try to assert these as possible alternative justifications for its determination of Blue Pipe's duty evasion because Commerce amended its Final Scope Ruling. Any attempt by CBP in this appeal to salvage the validity of its affirmative duty evasion determination for Blue Pipe despite the amendment of Commerce's Final Scope Ruling would be an impermissible *post hoc* rationalization.  *See, SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."); *Hoogovens*

*Staal BV v. United States*, 93 F. Supp. 2d 1303, 1305 (CIT 2000) (agency's determination "must be reviewed by the court on the basis of rationale articulated and evidence relied on by the agency and not on *post hoc* rationalization of counsel").

> **C.    The Effective Date of CBP's Duty Evasion Determination for Blue Pipe Should Not Be Before the Initiation Date of Commerce's Scope Inquiry**

As noted above, Blue Pipe believes that CBP's duty evasion determination cannot be sustained by this Court because CBP can no longer satisfy the necessary statutory requirements (i.e., no covered merchandise, no material false statement, no evasion of AD requirements). None of Blue Pipe's entries of dual-stenciled pipe should be subject to any AD duties. The issue of the timing of the effective date of CBP's duty evasion determination may be rendered moot if the Court rules that CBP's duty evasion determination is invalid in its entirety.

If, however, this Court finds that CBP's duty evasion determination is still valid, there would still be an outstanding question as to the appropriate effective date for CBP's duty evasion determination.  Pursuant to its affirmative duty evasion determination, CBP suspended liquidation on Blue Pipe's entries beginning October 18, 2018, which is one year before the initiation date of CBP's EAPA investigation. Blue Pipe, however, believes that the effective date for CBP's EAPA investigation cannot precede the effective date of Commerce's Final Scope Ruling. Blue Pipe thus believes CBP's duty evasion determination should not apply to any of Blue Pipe's entries before November 22, 2019, which was the initiation date of Commerce's scope inquiry of whether dual stenciled pipe was covered by the scope of the AD Order.

As discussed above, Commerce's original Final Scope Ruling determined that dual-stenciled pipe was within the scope of the AD Order.  However, Commerce's Final Scope Ruling also specifically stated that the effective date for the suspension of liquidation pursuant to this scope ruling would apply only to the unliquidated entries of dual stenciled pipe "entered, or

withdrawn from warehouse, for consumption *on or after the date of initiation of the scope inquiry*."  Commerce Final Scope Ruling, June 30, 2020.

Commerce's Scope Ruling was consistent with Commerce's regulations at 19 C.F.R. § 351.225(l)(3), whereby Commerce after issuing a final scope ruling may (1) direct CBP to continue the suspension of liquidation of previously suspended entries and apply the applicable cash deposit rate until appropriate liquidation instructions are issued; and (2) direct CBP to begin the suspension of liquidation and require AD cash deposits for each unliquidated entry of the product not yet suspended that was entered, or withdrawn from warehouse, for consumption on or after the date of initiation of the scope inquiry.

Thus, pursuant to Commerce's Scope Ruling, only dual stenciled pipe entered on or after November 22, 2019 would be considered as within the scope of the AD Order.  Because Commerce's Scope Ruling specifically provided an effective date for when unliquidated entries of dual stenciled should begin to be considered subject merchandise (i.e., on or after the date of initiation of the scope inquiry), CBP could not determine that any of Blue Pipe's entries of dual stenciled pipe made before November 22, 2019 were "covered merchandise."  Entries of dual stenciled pipe made before November 22, 2019 could not be "covered merchandise" for purposes of the EAPA investigation because Commerce's Scope Ruling specifically set an effective date for its scope ruling so that dual stenciled pipe could be considered as subject to the AD Order only if the entries of dual stenciled pipe were made on or after November 22, 2019.

CBP thus arbitrarily determined that covered merchandise would apply to Blue Pipe's entries before the initiation date of Commerce's scope inquiry which was an unlawful abuse of discretion that was not in accordance with law.

CBP's authority under the EAPA statute cannot supersede Commerce's authority to be "master of the antidumping law." *Thai Pineapple Public Co., Ltd. v. United States*, 187 F.3d 1362, 1365 (Fed. Cir. 1999). CBP has no valid legal basis under the EAPA statue to claim that Commerce can only provide a binary "yes-no" answer as to whether certain products are covered by the AD Order. As discussed above, CBP clearly has no authority to determine by itself whether dual stenciled pipe are goods covered by the AD Order. CBP cannot choose to accept only the part of Commerce's Scope Rulings that decide whether a product is included within the scope, but ignore the other part of the same rulings that set a specific effective date for that scope ruling. Here, Commerce did set a specific temporal limitation on when CBP could determine dual stenciled pipe to be within the scope of the AD Order (i.e., November 22, 2019 – initiation date of Commerce's scope inquiry). CBP, however, ignored the effective date set by Commerce in its scope ruling and instead arbitrarily and unlawfully expanded the scope coverage to Blue Pipe's entries made before the effective date of Commerce's scope ruling.

Allowing CBP to define the universe of entries to which an EAPA duty evasion applies in a manner that exceed the effective dates set by Commerce in scope rulings would effectively usurp Commerce of its unquestioned authority to ultimately determine what products are covered by antidumping orders and also when those scope rulings should apply. CBP's authority under the EAPA statute is necessarily limited by CBP's required deference to Commerce in determining all things related to scope definitions. Because CBP's definition for "covered merchandise" under the EAPA statute is defined as merchandise subject to an AD/CVD order, and only Commerce has the ultimate authority to make such scope rulings, CBP must defer to Commerce's scope rulings in their entirety. There is no legal basis for CBP to defer only to

Commerce's decision on what products are covered by the scope definition, but not to Commerce's decision on the effective date of its scope rulings.

In sum, in the event that this Court still finds CBP's duty evasion determination legally valid, we request that this Court find that the effective date of CBP's duty evasion determination should be revised so that it applies only to Blue Pipe's entries made on or after the initiation date of Commerce's scope inquiry (i.e., November 22, 2019).

## V.   CONCLUSION

For the reasons discussed above, Blue Pipe respectfully requests that the Court hold that CBP's determinations that Blue Pipe entered covered merchandise into the United States through material false statements that resulted in Blue Pipe evading the payment of antidumping duties were arbitrary and capricious, an abuse of discretion and were not in accordance with law. Commerce has amended its Final Scope Ruling and now has determined that dual stenciled pipe is not within the scope of the AD Order.  Blue Pipe requests that the Court remand this matter to CBP with instructions to reconsider its duty evasion determination in light of Commerce's Amended Final Scope Ruling.

Even if the Court finds that CBP's duty evasion determination as lawful, Blue Pipe requests that the Court find that CBP's decision to apply that determination to entries made before DOC had initiated its scope inquiry on whether dual-stenciled pipe was subject merchandise was arbitrary and capricious, an abuse of discretion and was not in accordance with law.

We request that this Court award Plaintiff a judgment for costs, including reasonable attorney fees, in accordance with the Equal Access to Justice Act 28 U.S.C. § 2412.

We request that this Court grant Plaintiff such additional relief as the Court may deem

just and proper.


Respectfully submitted,


___/s/ Adams C. Lee___
Adams C. Lee
HARRIS BRICKEN SLIWOSKI LLP
600 Stewart Street, Suite 1200
Seattle, WA 98101
(206) 264-5457
Counsel to Blue Pipe Steel Center Co., Ltd.

## <u>Certificate of Compliance with Chambers Procedure 2(B)(1)</u>

The undersigned hereby certifies that the foregoing reply brief contains 7,405 words, exclusive of the table of contents, table of authorities, and certificates of counsel, and therefore complies with the maximum 14,000 word count limitation set forth in the Standard Chambers Procedures of the U.S. Court of International Trade.

BY: <u>/s/Adams C. Lee</u>
Adams C. Lee