IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

```
_____
                                        )
BLUE PIPE STEEL CENTER, CO., LTD.,      )
                                        )
              Plaintiff,                )
                                        )
       v.                               )
                                        )
UNITED STATES,                          )     Court No. 21-00081
                                        )
              Defendant,                )
                                        )
       and                              )
                                        )
WHEATLAND TUBE CO. and                  )
NUCOR TUBULAR PRODUCTS, INC.,           )
                                        )
              Defendant-Intervenors.    )
_____)
```

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
## RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD

BRIAN M. BOYNTON
Principal Deputy
Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

Of Counsel:

TAMARI J. LAGVILAVA
Senior Attorney
Enforcement & Operations
Office of Chief Counsel
U.S. Customs and Border Protection

ROBERT R. KIEPURA
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480 Ben Franklin Station
Washington, DC  20044
Telephone: 202-305-4436
Email: Robert.Kiepura@usdoj.gov

February 15, 2023                       Attorneys for Defendant

**TABLE OF CONTENTS**

STATEMENT PURSUANT TO RULE 56.2.................................................................... 2

I.    The Administrative Determination Under Review ........................................... 2

II.   Issues Presented For Review.......................................................................... 2

STATEMENT OF FACTS ........................................................................................ 2

I.    The EAPA Allegation..................................................................................... 2

II.   CBP's Notice Of Initiation Of The EAPA Investigation.................................. 3

III.  CBP's Laboratory Examinations And Request For Information....................... 4

IV.   Commerce's Final Scope Ruling Relating To The Thailand AD Order ........... 4

V.    CBP's Final EAPA Determination Issued By TRLED .................................... 5

VI.   CBP's January 2021 Administrative Review Of TRLED Determination......... 6

PROCEDURAL BACKGROUND............................................................................ 6

SUMMARY OF THE ARGUMENT........................................................................ 7

ARGUMENT ......................................................................................................... 8

I.    Standard Of Review ....................................................................................... 8

II.   Blue Pipe's Arguments Are Entirely Dependent On The Court's Scope Ruling In
      *Saha Thai*................................................................................................... 9

III.  CBP's EAPA Investigation Timeline Is Not Tied To The Initiation Of Commerce's
      Scope Review .............................................................................................. 12

IV.   This Court Should Withhold Ruling On This Case Until The Resolution Of The
      Appeal Of *Saha Thai*.................................................................................. 14

CONCLUSION..................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Cleo Inc. v. United States*,
  501 F.3d 1291 (Fed. Cir. 2007) ............................................................. 9

*Consol. Bearings Co. v. United States*,
  412 F.3d 1266 (Fed. Cir. 2005) ............................................................. 8

*Consolo v. Fed. Mar. Comm'n*,
  383 U.S. 607 (1966) ............................................................................. 9

*Diamond Tools Tech. LLC v. United States*,
  545 F. Supp.3d 1324 (Ct. Int'l Trade 2021) ....................................... 13

*Matsushita Elec. Indus. Co. v. United States*,
  750 F.2d 927 (Fed. Cir. 1984) .............................................................. 9

*Ningbo Dafa Chem. Fiber Co. v. United States*,
  580 F.3d 1247 (Fed. Cir. 2009) ............................................................ 9

*PAM, S.p.A. v. United States*,
  582 F.3d 1336 (Fed. Cir. 2009) ............................................................ 9

*Saha Thai Steel Pipe Pub. Co., Ltd. v. United States*,
  547 F. Supp. 3d 1278 (Ct. Int'l Trade 2021) ................................. passim

*SKF USA Inc. v. United States*,
  263 F.3d 1369 (Fed. Cir. 2001) ............................................................ 8

*Star Fruits S.N.C. v. United States*,
  393 F.3d 1277 (Fed. Cir. 2005) ............................................................ 8

*Sunpreme Inc. v. United States*,
  946 F.3d 1300 (Fed. Cir. 2020) ................................................ 6, 13, 14

*Wheatland Tube Co. v. United States*,
  161 F.3d 1365 (Fed. Cir. 1998) ............................................................ 8

**Statutes**

19 U.S.C. § 1517 .................................................................................. passim

Pub. L. 114–125 ............................................................................................ 2

**Regulations**

19 C.F.R. § 351.225...................................................................................9, 12, 14

**Other Authorities**

*Circular Welded Carbon Steel Pipes and Tubes from Thailand*,
   51 Fed. Reg. 8341 (Dep't Commerce Mar. 11, 1986)........................................... 2

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

_____

|  |  |  |
|---|---|---|
| BLUE PIPE STEEL CENTER, CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | Court No. 21-00081 |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WHEATLAND TUBE CO. and | ) | |
| NUCOR TUBULAR PRODUCTS, INC., | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

_____)

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Defendant, the United States, respectfully submits this response in opposition to the Rule

56.2 motion for judgment upon the agency record filed by plaintiff, Blue Pipe Steel Center Co.,

LTD., (Blue Pipe).  Blue Pipe Mot. for Judgment on Agency Record, Dec. 14, 2022, ECF No. 50

(Blue Pipe Mot.).  Blue Pipe imports dual-stenciled pipe produced by Saha Thai Public Company

Ltd. (Saha Thai).  *Id.* at 2.  Blue Pipe challenges various aspects of a final determination of evasion

by U.S. Customs and Border Protection (CBP).  For the reasons discussed below, we request that the

Court (1) deny Blue Pipe's motion to the extent that Blue Pipe argues that CBP unlawfully applied

its evasion determination to Blue Pipe entries that predated the initiation of the U.S. Department of

Commerce's (Commerce) scope review relating to dual-stenciled pipe, and (2) defer its decision on

the remaining issues (or at least the issues relating to *relief*) until after the Federal Circuit resolves

the appeal of *Saha Thai Steel Pipe Pub. Co., Ltd. v. United States*, Fed. Cir. Case No. 22-2181.

**STATEMENT PURSUANT TO RULE 56.2**

**I.      The Administrative Determination Under Review**

The challenged administrative determination is CBP's September 11, 2020 determination in

Enforce and Protect Act (EAPA) Case No. 7401 (Final Determination) CR 72 and the January 27,

2021 Administrative Review Determination by CBP's Office of Trade, Regulations and Rulings

Directorate (Administrative Review), PR 106.[1]

**II.      Issues Presented For Review**

1.      Whether the product imported by Blue Pipe, dual-stenciled pipe produced by Saha

Thai, falls within the scope of an antidumping order.   Blue Pipe Mot. at 3; *see Circular Welded*

*Carbon Steel Pipes and Tubes from Thailand*, 51 Fed. Reg. 8341 (Dep't Commerce Mar. 11, 1986)

(AD Order).

2.      Blue Pipe challenges whether, if its product falls within the scope of the AD order,

the  CBP  evasion  determination  should  be  applied  to  products  imported  prior  to  Commerce's

initiation of its scope inquiry.

**STATEMENT OF FACTS**

**I.      The EAPA Allegation**

In 2016, as part of the Trade Facilitation and Trade Enforcement Act, Pub. L. 114–125, Title

IV, § 421(a), Congress passed EAPA, codified at 19 U.S.C. § 1517, which established a formal

administrative procedure for CBP to investigate allegations of evasion of antidumping and

countervailing duty orders as part of the United States' efforts to ensure a level playing field for

---

[1] Citations to documents in the public record (PR) and confidential record (CR) refer to the
public (ECF No. 20) and confidential (ECF No. 21) versions of the administrative record,
respectively, filed in this Court.

domestic industries.  On October 4, 2019, defendant-intervenor Wheatland Tube, along with other

domestic producers of circular welded carbon steel pipes and tubes, filed an EAPA allegation

against Blue Pipe.[2]  PR 1.  The domestic producers alleged that Blue Pipe was evading duties

required under the AD order.  *Id.*  The domestic producers further alleged that reasonably available

information suggested that Blue Pipe evaded the Thailand AD Order by importing standard pipe

from Thailand (which is subject to the AD Order), and incorrectly declared it as "line pipe" which is

not subject to the AD Order.  *Id.*

The allegers asserted that Blue Pipe acted as the importer of standard pipe produced by Saha

Thai and that Blue Pipe was affiliated with Saha Thai.  *Id.* at 3.  Prior to Blue Pipe acting as its

importer, Saha Thai acted as its own importer of record and previously imported standard pipe,

which is covered by the AD Order and Saha Thai paid applicable AD duties.  CR 72 at 2.  Once

Blue Pipe started acting as an importer and shipper of Saha Thai's product, the imported product

was reported on entry documents as dual stenciled pipe, indicating it met the requirements of both

ASTM A53, "standard pipe," and API 5L (a type of "line pipe").  *Id.*; *see also* Blue Pipe Mot. At 2.

## II.    CBP's Notice Of Initiation Of The EAPA Investigation

On November 8, 2019, CBP initiated an EAPA investigation of Blue Pipe pursuant to Title

IV, section 421 of the Trade Facilitation and Trade Enforcement Act of 2015.  PR 6; *see also* PR 18

at 2.  After the initiation of the investigation, on December 12, 2019, CBP issued a Customs Form

28 ("CF-28") to Blue Pipe to request information concerning certain entries.  CR 18 at 4; PR 23 at 4.

Blue Pipe did not respond to CBP's requests for production of sales records and documentation for

---

[2] Blue Pipe imported certain dual-stenciled pipe that had been produced by Saha Thai.  Blue Pipe Mot. at 2.  Specifically, Blue Pipe imported dual-stenciled pipe which are pipe products that meet the standards of both American Society for Testing and Materials ("ASTM") A53, which is referred to as "standard pipe," as well as pipe meeting the standard of American Petroleum Institute ("API") 5L, which is certified as a type of "line pipe."  *Id.*

3

proof of certification as "standard pipe."  CR 18 at 4; CR 72 at 3.  Subsequently, in January 2020, CBP conducted cargo exams for certain Blue Pipe entries.  CR 18 at 4; CR 72 at 4.

### III.    CBP's Laboratory Examinations And Request For Information

CBP chose six pipes identified as manufactured by Saha Thai for laboratory testing.  CR 72 at 4.   The CBP testing indicated that the pipes were consistent with the requirements of ASTM A53 Grade A and API 5L PSL 1 Pipe Grade A.  *Id.*  Pipes marked or stenciled with the ASTM monogram are standard pipes primarily used for conveyance of air, gas, water, *etc.* at low pressures for mechanical applications such irrigation systems.  *Id.*  API marking requirements apply to line pipes used for transportation of gas, oil or water in a pipeline distribution system.  *Id.*  Blue Pipe's samples tested by CBP were in fact dual stenciled, and met the requirements of both standard pipe and line pipe as declared on the entry documents.  *Id.*

On February 26 and 27, 2020, respectively, CBP issued Request for Information (RFI) questionnaires to Blue Pipe and Saha Thai and sent additional supplemental questions on May 29, 2020.  PR 24, 25, 55 & 56; CR 19, 20, 38 & 39.  Blue Pipe submitted its responses on April 24, 2020 and June 3, 2020.  PR 37-43, 51, 50; CR 21-29, 36, 37.  Saha Thai's responses were received on May 4, 2020 and June 3, 2020.  PR 64; CR 30-35, 39-40.  In these responses, Blue Pipe and Saha Thai, while admitting that Blue Pipe exported line pipe manufacture by Saha Thai into the United States, both denied claims that they were affiliated.  Saha Thai reported that it had no direct contact with Blue Pipe's U.S. customers and Blue Pipe contended that Saha Thai was used to export line pipe because of their long-standing relationship along with Saha Thai's ability to produce the required products according to Blue Pipe's customers' specifications.  *See* CR 72 at 4-5.

### IV.    Commerce's Final Scope Ruling Relating To The Thailand AD Order

In June 2020, Commerce issued a scope ruling regarding the AD order on circular welded pipes and tubes from Thailand.  *See Antidumping Duty Order on Circular Welded Carbon Steel*

*Pipes and Tubes from Thailand: Final Scope Ruling on Line Pipe and Dual-Stenciled Standard and Line Pipe from Thailand* (Dep't of Commerce June 30, 2020) (*Final Scope Ruling*) PR 79. Commerce determined that dual-stenciled pipe compliant with both standard pipe and line pipe specifications, such as ASTM A53 and API 5L, respectively, was within the scope of the order. *Id.* at 1.  The ruling distinguished between "line pipe" and the dual specification product. *Id.*  Line pipe was deemed not subject to the AD Order. *Id.*

## V.    CBP's Final EAPA Determination Issued By TRLED

As noted above, CBP's Trade Remedy Law Enforcement Directorate ("TRLED") issued its final determination on September 11, 2020.  CR 72.  TRLED determined that, based on substantial evidence in the record, Blue Pipe had entered merchandise covered by the AD Order through evasion.  *Id.* at 7.  Specifically, Blue Pipe had made false statements when it declared that entries of dual stenciled pipe were not subject to the AD Order.  *Id.*  Such entries should have been declared as covered merchandise and been subject to cash deposits.  *Id.*  Furthermore, TRLED relied on Commerce's scope ruling to find that Blue Pipe's imports of dual stenciled pipe constituted covered merchandise.  *Id.*  TRLED determined that Blue Pipe met the other elements of evasion based on the evidence on the record—that Blue Pipe actually had imports of dual stenciled pipe during the period of investigation, and that it made false statements on entry documents by indicating that AD cash deposits were not applicable.  CR 72 at 5, 7-8.  For these reasons, TRLED concluded that Blue Pipe had entered covered merchandise into the United States through evasion of the AD Order.  *Id.*

Following CBP's evasion determination, CBP suspended liquidation of all entries of covered merchandise imported by Blue Pipe for the period of investigation—October 18, 2018 through September 11, 2020—and continuing until instructed to liquidate by CBP.  *Id.* at 8.  In addition, for any entries of covered merchandise following the period of review, CBP indicated that it would rate adjust and change to Entry Type 03 all extended and unliquidated entries of subject covered

5

merchandise under this investigation, using "all others" AD rates for Thailand, unless Commerce determined a separate rate that would apply to that entry. *Id.* Also, Blue Pipe would be required to post single transaction bonds, as appropriate, and that CBP would commence a review of the sufficiency of Blue Pipe's continuous bonds. *Id.*

## VI. CBP's January 2021 Administrative Review Of TRLED Determination

On January 27, 2021, following Blue Pipe's October 2020 request for review of the TRLED's September 2020 determination of evasion, CBP's Office of Regulations and Rulings reviewed the matter *de novo* and issued its administrative review decision affirming the finding of evasion. CR 73 at 16. In short, CBP determined that substantial evidence supported the finding of evasion. *Id.* CBP rejected Blue Pipe's argument that Blue Pipe did not have the state of mind necessary to file false entries, noting that the EAPA statute does not contain a knowledge requirement. *Id.* at 13. In other words, mistake is not a defense to a finding of evasion. *Id.* Further, CBP determined that Blue Pipe's other claims were without merit. First, Blue Pipe had once again claimed that the subject merchandise was not covered by the AD Order. *Id.* at 15. CBP confirmed that the merchandise fell within the scope of the order based on Commerce's clear scope ruling. *Id.* Blue Pipe also argued that CBP erred by suspending liquidation of its merchandise prior to the issuance of a final scope determination. *Id.* at 16. However, CBP determined that Blue Pipe was incorrect and that the Federal Circuit's decision in *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1319 (Fed. Cir. 2020), supported its position. *Id.* at 15. Accordingly, CBP affirmed its evasion determination contained in the September 11, 2020 decision.

## PROCEDURAL BACKGROUND

In July 2020, Saha Thai filed a complaint (No. 20-00133) in this Court challenging Commerce's *Final Scope Ruling* regarding the Thailand AD Order. In a decision issued on October 6, 2021, the Court held that Commerce's scope determination to include dual stenciled pipe under

the AD Order was not supported by substantial evidence. *Saha Thai Steel Pipe Pub. Co., Ltd. v. United States*, 547 F. Supp. 3d 1278 (Ct. Int'l Trade 2021) ("*Saha Thai I*").  The Court then remanded the case to Commerce.  *Id.*  In its amended remand determination, Commerce, under respectful protest, determined that dual stenciled pipe was outside the scope of the AD order; this Court sustained the remand determination.  Opinion, *Saha Thai Steel Pipe Pub. Co., Ltd. v. United States*, No. 20-00133, Aug. 25, 2022, ECF No. 74 ("*Saha Thai II*"); *see also* Amended Remand Results, *Saha Thai*, No. 20-00133, Apr. 22, 2022, ECF No. 69.  On September 7, 2022, Wheatland Tube filed an appeal to the Federal Circuit challenging this Court's holding in *Saha Thai II* and the Court's judgment.  Notice of Appeal, *Saha Thai*, No. 20-00133, Sept. 2, 2022, ECF No. 77.  That appeal is pending.

On March 8, 2021, during the Court's proceedings in *Saha Thai*, Blue Pipe filed a complaint challenging CBP's final EAPA determination.  Compl., ECF No. 2.  The Court granted a stay of proceedings while the *Saha Thai* case proceeded in this Court.  Order, ECF No. 32.  Following *Saha Thai II* and the filing of a joint status report by the parties, however, this Court issued an order setting a briefing schedule for this case that included stipulations that the Court "may defer any order regarding the liquidation and refunding of antidumping duty deposits made to {CBP} should the mandate not have issued in the related Federal Circuit appeal *Saha Thai Steel Pipe Public Company Limited v. United States*, No. 2022-2181."  Order, ECF No. 49.

## SUMMARY OF THE ARGUMENT

Commerce's under protest amended remand determination that was sustained by this Court in *Saha Thai* currently controls the outcome in this case because it removes the fundamental predicate for CBP's evasion determination – that is, that the pipe imported by Blue Pipe was covered by the Thailand AD Order.  *Saha Thai* is currently subject to Wheatland's appeal, however, and a Federal Circuit decision to vacate or reverse *Saha Thai* could materially affect the outcome of

7

this case.  All of Blue Pipe's arguments, save one, are predicated on the scope ruling in *Saha Thai*, meaning that it largely recognizes that its case will rise or fall with the disposition of the pending appeal.  Blue Pipe's remaining argument concerning CBP's timeline for its evasion determination is without merit.  The EAPA statute does not require CBP to await Commerce's initiation of a scope review prior to initiating an EAPA investigation.  Finally, in line with the parties' stipulation in the joint status report, we request that the Court withhold issuing any opinion in this case until such time as the appeal of *Saha Thai* is resolved, or, in the alternative, defer any order concerning liquidation or refund of cash deposits.

## ARGUMENT

### I.  Standard Of Review

In reviewing CBP's evasion determinations, this Court examines "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  19 U.S.C. § 1517(g)(2).  "Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion."  *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998).  "An agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently."  *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001).  "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors."  *Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (quoting *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).

With respect to factual findings, "substantial evidence" is "more than a mere scintilla," and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

8

*PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009). Substantial evidence may be

"'less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions

from the evidence does not prevent an administrative agency's finding from being supported by

substantial evidence.'" *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir.

1984) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619-20 (1966)); *accord Ningbo Dafa*

*Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1260-61 (Fed. Cir. 2009) (sustaining agency's

decision, "{d}espite some conflicting evidence," as being "supported by substantial evidence");

*Cleo Inc. v. United States*, 501 F.3d 1291, 1298 (Fed. Cir. 2007) (agency's conclusion was

supported by "substantial evidence," despite "mixed evidence" and a "close" case "on the facts,"

because "a reasonable factfinder . . . could conclude from the evidence" the same as the agency had

concluded).

## II.    Blue Pipe's Arguments Are Entirely Dependent On The Court's Scope Ruling In *Saha Thai*

As discussed above, CBP's final EAPA determination of evasion was based on Commerce's

scope determination that dual stenciled pipe was within the scope of the Thailand AD order. CR 72

at 6. In *Saha Thai I*, this Court remanded that issue to Commerce, and directed Commerce to

"conduct an analysis that considers the sources listed in 19 C.F.R. § 351.225(k)(1) in assessing

whether dual-stenciled pipe falls within the scope of the Thailand Order." 547 F. Supp. 3d at 1299.

Following *Saha Thai I*, Commerce issued an amended remand determination where, under

respectful protest, it determined that dual stenciled pipe was outside the scope. *See Saha Thai II*.

Accordingly, pursuant to Commerce's under protest amended remand determination, the

merchandise entered by Blue Pipe falls outside the scope of the AD order. *Id.* *Saha Thai* is

dispositive of whether the merchandise imported by Blue Pipe constitutes covered merchandise

within the meaning of EAPA, however, as noted above, *Saha Thai* is currently on appeal to the

Federal Circuit.  If the Federal Circuit were to vacate and/or reverse the ruling in *Saha Thai*, that decision is likely to have a direct impact on this case.[3]

In any event, Blue Pipe's arguments are ultimately linked to the Court's decision in *Saha Thai* that dual-stenciled pipe is not covered by the AD Order.  For example, Blue Pipe's argument that CBP "appears to overstep its authority" by asserting that it can determine whether dual stenciled pipe was covered by the AD order "even without confirmation by Commerce," Blue Pipe Mot. 12-13, is, arguably, irrelevant given Blue Pipe's acknowledgement that "{b}oth CBP's Sep. 11, 2020 Initial EAPA Determination and CBP's Jan. 27, 2021 EAPA Determination *relied on Commerce's June 30, 2020 Final Scope Ruling*."  *Id.* at 11 (emphasis added).  Even if relevant, the argument will be mooted – one way or the other – by the Federal Circuit's disposition of the appeal in *Saha Thai*.  In other words, if *Saha Thai I* continues to control, then it is immaterial whether CBP was asserting independent authority as the product was not within the scope of the AD Order.  Similarly, if the decision were to be reversed and the product were found to be within scope, such a determination would validate CBP's finding of evasion as it is clear that CBP relied on Commerce's June 2020 scope ruling.

Blue Pipe's next argument is entirely redundant of the scope discussion.  Blue Pipe Mot. at 14-16.  Blue Pipe discusses how CBP's scope analysis mirrors that of Commerce in *Saha Thai*.  *Id.* We acknowledge that CBP's analysis was similar as it very clearly stated that it was relying on Commerce's scope ruling.  CR 72 at 6-7.  Again, CBP's investigation, and specifically a finding whether Blue Pipe's imports constituted "covered merchandise" under EAPA, is clearly tied to Commerce's scope ruling and is currently controlled by this Court's decision in *Saha Thai*.  Thus,

---

[3]  Depending on the specifics of such a ruling, we would respectfully submit that additional briefing in this case would be required to address the impact of the ruling on this case.

Blue Pipe's assertions on this point are entirely redundant.  Blue Pipe Mot. at 14-16.

Next, Blue Pipe makes the assertion that CBP's finding of false statements is unsupported.  Blue Pipe Mot. at 16-18.  Again, we acknowledge that, based on the Court's decision in *Saha Thai*, Blue Pipe's statements that it was not entering covered merchandise are correct.  Blue Pipe's argument on this point is also *entirely* dependent on the Court's decision in *Saha Thai*.  *Id*.  In other words, if *Saha Thai* is affirmed then Blue Pipe's statements will not have been false; however, should *Saha Thai* be reversed, CBP's finding that Blue Pipe made false statements would be supported by substantial evidence.  *Id*.  This is because Blue Pipe does not dispute CBP's findings that the pipes selected for testing by CBP "met the industry specifications for both standard and line pipe as declared on the entry documents."  *Id.* at 17.  Thus, the only question was whether those products were covered by the scope order.  *See Id*.  Blue Pipe's argument concerning the evasion of antidumping cash deposits is once again tied to the scope ruling in *Saha Thai*.  Blue Pipe Mot. at 18-19.  The Court's determination that dual stenciled pipe was outside the scope necessarily means that Blue Pipe was not required to pay cash deposits on such merchandise.  However, similar to the discussion above regarding the pending appeal, the reverse would also be true—based on Blue Pipe's arguments, a reversal by the Federal Circuit of *Saha Thai* would substantiate CBP's determination concerning Blue Pipe's nonpayment of cash deposits.

Finally, Blue Pipe argues that CBP ignored record evidence.  Blue Pipe Mot. at 19-22.  Blue Pipe alleges that it submitted voluminous records that CBP failed to cite, but fails to make any allegation as to how this evidence would have shifted the scope finding.  *Id*.  In other words, Blue Pipe does not dispute that the product that it entered was dual-stenciled pipe during the EAPA period of investigation.  *Id*.  Thus, the only question is whether that type of pipe is covered by the AD Order; a question we have addressed repeatedly above.  Blue Pipe fails to argue that, had Commerce found that merchandise was in scope, CBP's alleged failure to address Blue Pipe's

11

submitted evidence would have changed the outcome. *Id.* Blue Pipe does allege that some of the evidence went to its timing argument, addressed below, but it does not claim that, had Commerce's scope determination been affirmed by this Court, that any of its submitted evidence would have compelled CBP to make a different finding than it did. *Id.* at 20-21. At bottom, Blue Pipe's evidentiary argument becomes nothing more than another argument premised upon the scope ruling in *Saha Thai*.

**III.   CBP's EAPA Investigation Timeline Is Not Tied To The Initiation Of Commerce's Scope Review**

As an initial matter, we concur with Blue Pipe that the Court's holding that dual-stenciled pipe is not covered by the AD Order currently moots any other issues in this case. Blue Pipe Mot. at 22. However, the scope issue notwithstanding, Blue Pipe's timing argument is without merit.

CBP's evasion determination extends to all of Blue Pipe's entries subject to the EAPA investigation, which started on October 18, 2018 and extended until September 11, 2020, regardless of the timelines outlined in Commerce's scope ruling. *See* CR 18; CR 72. Blue Pipe's argument that the evasion determination should not apply before the initiation of Commerce's scope inquiry, November 22, 2019, is flawed for two reasons.

First, CBP has a separate and independent authority under EAPA to suspend liquidation: CBP's EAPA evasion proceedings are not governed by the date on which Commerce directed CBP to suspend liquidation in a wholly separate scope proceeding under Commerce's regulation 19 C.F.R. § 351.225. CBP has independent statutory authority to conduct an EAPA investigation, and to suspend liquidation of entries by imposing interim measures and at the time it issues a final determination of evasion under EAPA. 19 U.S.C. §1517(e), 19 U.S.C. § 1517(d). In response to a final affirmative determination of evasion, the statute provides that CBP shall "suspend the liquidation of unliquidated entries of such covered merchandise that are subject to the determination

and that enter on or after the date of the initiation of the investigation." 19 U.S.C.

§ 1517(d)(1)(A)(i). Nothing in EAPA directs that Commerce's regulatory timelines regarding the

suspension of liquidation must supersede EAPA's statutory timelines. *See* 19 U.S.C. § 1517(d). In

this case, pursuant to its statutory authority under 19 USC § 1517(c), CBP found that substantial

evidence on the record supported a conclusion that Blue Pipe was entering covered merchandise

without properly declaring the merchandise as subject to the AD Order on entry documents. CR 72

at 8. In accordance with the affirmative finding of evasion, CBP (under its own authority pursuant

to section 1517(d)(1)(A)(i)) suspended the liquidation of all entries made by Blue Pipe between

October 18, 2018 and September 11, 2020. CR 77 at 8.

       In the context of covered merchandise referrals under 1517(b)(4), the Court has agreed with

CBP's interpretation of the EAPA statute that Commerce's regulatory timelines do not bind CBP in

the EAPA context. *Diamond Tools Tech. LLC v. United States*, 545 F. Supp.3d 1324, 1351 (Ct.

Int'l Trade 2021). Specifically, the Court stated: "{T}o require that {CBP} be bound by

Commerce's later circumvention timeline would restrict {CBP's} authority to find {pre-

anticircumvention inquiry} entries were "covered merchandise," thereby limiting {CBP's}

enforcement authority under the EAPA with regard to those entries. Such an outcome would be

contrary to the congressional intent underlying the EAPA statute and {CBP's} ability to exercise its

statutory authority." *Diamond Tools*, 545 F. Supp.3d at 1351. This analysis applies regardless of

whether CBP submits a covered merchandise referral to Commerce, because any other outcome

would diminish CBP's ability to exercise its authority under EAPA and create perverse incentives

for the importers to delay seeking a scope ruling, thereby manipulating CBP's ability to enforce the

law.

       Second, in *Sunpreme Inc. v. United States*, 946 F.3d 1300 (Fed. Cir. 2020) (*en banc*) the

Court of Appeals for the Federal Circuit has recognized CBP's inherent authority to suspend

liquidation to enforce the antidumping duty law.  Even without the specific authority under EAPA,

CBP permissibly exercised its own inherent authority.  Blue Pipe contends that the suspension of

liquidation dates contained in 19 C.F.R. § 351.225(l) must supersede Congress's explicit direction to

CBP to suspend liquidation as of a date certain and extend liquidation of earlier entries under

sections 1517(d).  Blue Pipe Mot. at 22-23.  Even without the specific statutory direction to CBP,

the Federal Circuit in *Sunpreme* concluded that CBP had authority to take these actions when it

suspected an importer of entering covered merchandise as not subject to antidumping

duties.  *Sunpreme Inc. v. United States*, 946 F.3d at 1318.  Specifically, the Court reasoned that

"{a}ny other result would also be inconsistent with 19 C.F.R. § 351.225(l) {because that regulation}

expressly contemplates a scenario in which products are 'subject to suspension of liquidation at the

direction of {CBP}, but Commerce later initiates a scope inquiry and issues a 'final scope ruling {}

to the effect that the product in question is not included within the scope of the order' (i.e., that

{CBP'S} initial determination was incorrect)." *Id*.  "Such a regulation would be largely

unnecessary if {CBP}was only empowered to suspend liquidation where orders were clear and

unambiguous." *Id.*  In essence, CBP has co-extensive authority to suspend liquidation of

merchandise previously considered out of scope, and if CBP's suspension predates the initiation of

the scope inquiry, then CBP's determination must govern.  In sum, "{t}here is nothing 'retroactive'

about continuing to suspend liquidation where liquidation has already been suspended for the entire

relevant time period." *Sunpreme*, 946 F.3d at 1319.  Accordingly, Blue Pipe's assertion that it is

improper for CBP to initiate its evasion investigation prior to Commerce's scope findings is without

merit.

**IV.   This Court Should Withhold Ruling On This Case Until The Resolution Of The Appeal Of *Saha Thai***

      As discussed at length above, *Saha Thai* currently controls the scope ruling in this case.

Given the pending appeal of that decision, we respectfully request that the Court withhold issuing a decision in this matter until the appeal is resolved.  If the Court were to issue an opinion in this case relying on its decision in *Saha Thai* and that decision were later reversed, it would necessitate an appeal or reconsideration of the decision in this case in order to conform with the potential ruling from the Federal Circuit.  Given the briefing schedule issued in this case, this case will be fully briefed well before the Federal Circuit's resolution of *Saha Thai*.  We respectfully submit that, given the controlling nature of the scope determination over this case, that the Court would benefit from the Federal Circuit's ruling in the appeal of *Saha Thai* prior to issuing its decision here.  In the alternative, as the parties stipulated in the joint status report (ECF No. 48), should the Court proceed to issue a decision relying on *Saha Thai* before the resolution of the appeal, we respectfully request that the Court defer any order regarding the liquidation and refunding of antidumping duty deposits made to CBP until such time as mandate in the appeal of *Saha Thai* should issue.  *Id.* (detailing the parties' stipulation).

**CONCLUSION**

For the foregoing reasons, the Court should (1) deny Blue Pipe's motion to the extent that Blue Pipe argues that CBP unlawfully applied its evasion determination to Blue Pipe entries that predated the initiation of Commerce's scope review relating to dual-stenciled pipe, and (2) defer its decision on the remaining issues (or at least the issues relating to *relief*) until after the Federal Circuit resolves the appeal in *Saha Thai*.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy
Assistant Attorney General

PATRICIA M. McCARTHY
Director

                                        s/ Franklin E. White, Jr.
                                        FRANKLIN E. WHITE, JR.
                                        Assistant Director

Of Counsel:

                                        s/ Robert R. Kiepura
TAMARI J. LAGVILAVA                     ROBERT R. KIEPURA
Senior Attorney                         Trial Attorney
Enforcement & Operations                Commercial Litigation Branch
Office of Chief Counsel                 Civil Division
U.S. Customs and Border Protection      U.S. Department of Justice
                                        P.O. Box 480 Ben Franklin Station
                                        Washington, DC  20044
                                        Telephone: 202-305-4436
                                        Email: Robert.Kiepura@usdoj.gov

February 15, 2023                       Attorneys for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains approximately 4,839 words, excluding the parts of the brief exempted from the word limitation.  In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

/s/ Robert R. Kiepura