## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN

|  |  |  |
|---|---|---|
| BLUE PIPE STEEL CENTER CO., LTD., | : | |
| Plaintiff, | : | |
| v. | : | Court No. 21-00081 |
| UNITED STATES OF AMERICA; | : | |
| Defendant, | : | |
| WHEATLAND TUBE COMPANY and NUCOR TUBULAR PRODUCTS INC. | : | |
| Defendant-Intervenors. | : | |

## PLAINTIFF BLUE PIPE'S REPLY BRIEF

### (Public Version)

Adams C. Lee
HARRIS BRICKEN & SLIWOSKI LLP
600 Stewart Street, Suite 1200
Seattle, WA 98101
(206) 224-5657

March 29, 2023

**Table of Contents**

I.     DEFENDANT AGREES THAT CBP'S DUTY EVASION DETERMINATION
       WAS BASED SOLELY ON DOC'S SCOPE RULING AND NOT ON ANY OTHER
       FACTORS .................................................................................................................. 1

II.    DEFENDANT-INTERVENTORS' ARGUMENT THAT BLUE PIPE'S IMPORTS
       DID NOT MEET LINE PIPE SPECIFICATIONS SHOULD BE REJECTED ........ 3

       A.   IT WOULD BE PROCEDURALLY UNFAIR TO CONSIDER DEFENDANT-INTERVENORS'
            TESTING RESULTS OF BLUE PIPE'S IMPORTS THAT WERE NEVER AVAILABLE TO
            BLUE PIPE DURING CBP'S EAPA INVESTIGATION .......................................................... 3

       B.   THE RECORD EVIDENCE FULLY DEMONSTRATES THAT BLUE PIPE'S IMPORTS WERE
            OF LINE PIPE ............................................................................................................. 6

            1.   CBP's Own Testing Results Support a Finding that Blue Pipe's Products Were
                 Dual-Stenciled Pipe ................................................................................................ 6

            2.   Blue Pipe's and Saha Thai's EAPA Questionnaire Responses Support CBP's
                 Finding that Blue Pipe's Products Were Dual-Stenciled Pipe ................................. 7

III.   THE COURT SHOULD NOT GIVE CBP ANY LEEWAY IN ANY REMAND
       PROCEEDING .......................................................................................................... 11

IV.    IF NECESSARY, THE COURT SHOULD DIRECT CBP TO AMEND THE
       EFFECTIVE DATE OF CBP'S DUTY EVASION DETERMINATION.................. 14

V.     CONCLUSION ......................................................................................................... 18

**Table of Authorities**

**Cases**

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. V. United States*, 483 F. Supp. 3d 1253, 1272 (Ct. Int'l Trade 2020) ........................................................................ 12

*Consolo v. Fed. Mar. Comm'n,* 383 U.S. 607, 620 (1966). ........................................................ 11

*Diamond Tools Tech. LLC v. United States*, CIT Ct. No. 20-00060, Slip Op 22-145 (Dec. 16, 2022). ............................................................................................................................................ 17

*Inner Mongolia Jianlong Biochemical Co. v. United States*, 337 F. 3d 1329, 1334 (Ct. Int'l Trade 2018) .......................................................................................................................................... 12

**Statutes**

19 U.S.C. § 1517(a)(3), (a)(5)(A) .............................................................................................. 15

**Regulations**

19 C.F.R. § 165.1 ........................................................................................................................ 16

Plaintiff Blue Pipe Steel Center Co. Ltd. ("Blue Pipe"), submits this reply brief to address certain arguments raised by Defendant, the United States, and by Defendant-Intervenors, Wheatland Tube Company ("Wheatland") and Nucor Tubular Products Inc. ("Nucor") (collectively "Petitioners") in their respective response briefs to defend the determinations of the U.S. Customs and Border Protection ("CBP" or "Customs") in the Enforce and Protect Act ("EAPA") investigation (EAPA Case Number 7401):

(1) CBP's Trade Remedy Law Enforcement Directorate ("TRLED") Notice of Final Determination as to Evasion, September 11, 2020 ("*Sep. 11, 2020 Initial EAPA Determination*") (Appx17106-17114; Appx5109-5117).

(2) CBP's Office of Trade Regulations & Rulings Administrative Review Determination of EAPA Case Number 7401 ("*Jan. 27, 2021 EAPA Review Determination*") (Appx17115-17131; Apx5176-5192).

## I.   DEFENDANT AGREES THAT CBP'S DUTY EVASION DETERMINATION WAS BASED SOLELY ON DOC'S SCOPE RULING AND NOT ON ANY OTHER FACTORS

Defendant acknowledges that CBP's final EAPA determination of Blue Pipe's evasion was based entirely on the original scope ruling by the U.S. Department of Commerce ("Commerce") that dual stenciled pipe was within the scope of the antidumping order on Circular Welded Carbon Steel Pipes and Tubes from Thailand.  Defendant's Response Brief at 11, 12 ("the only question is whether that type of pipe {dual-stenciled pipe} is covered by the AD Order.").  Defendant also acknowledges that Commerce's original scope ruling was invalidated by this Court's decisions in *Saha Thai* and that Commerce on remand determined that dual-stenciled pipe was outside the scope of the AD order.  Defendant acknowledges that "*Saha Thai* is dispositive of whether the merchandise imported by Blue Pipe constitutes covered merchandise within the meaning of EAPA," and that "*Saha Thai* controls the outcome of this

case because it removes the fundamental predicate for CBP's duty evasion determination." Defendant's Response Brief at 8, 10.

Defendant also acknowledges that the record evidence establishes that the merchandise entered by Blue Pipe was dual-stenciled pipe.  Defendant's Response Brief at 11 ("Blue Pipe does not dispute CBP's findings that the pipes selected by CBP 'met the industry specifications for both standard and line pipe as declared on the entry documents.'"; "Blue Pipe does not dispute that the product that it entered was dual-stenciled pipe during the EAPA period of investigation").  As noted below, although Defendant accepts the record evidence that Blue Pipe did in fact import dual-stenciled pipe, Defendant-Intervenors disagree and still assert that Blue Pipe's merchandise was not dual-stenciled pipe.  Below we address why this argument of Defendant-Intervenors should be rejected.

Defendant also acknowledges that it is "irrelevant" that CBP may have had independent authority to determine whether Blue Pipe's specific imports were merchandise covered by the scope of the AD Order because CBP's EAPA duty evasion determination was based solely on Commerce's now invalidated scope ruling.  Defendant's Response Brief at 10 ("it is immaterial whether CBP was asserting independent authority as the product was not within the scope of the AD Order.").  As noted below, Defendant-Intervenors disagree and assert that, even though CBP cited no other basis for its duty evasion determination other than relying upon Commerce's now invalidated scope ruling, CBP nonetheless should be given a second chance to reconsider all of the record evidence that it previously ignored in order to try to come up with a new alternative basis for an affirmative duty evasion determination.  Below we address why this argument of Defendant-Intervenors should be rejected.

## II.   DEFENDANT-INTERVENORS' ARGUMENT THAT BLUE PIPE'S IMPORTS DID NOT MEET LINE PIPE SPECIFICATIONS SHOULD BE REJECTED

As noted above, Defendant-Intervenors still believe that Blue Pipe's imports were not qualified as line pipe even though CBP in its EAPA determinations and in this appeal have expressly acknowledged that Blue Pipe's imports were in fact dual-stenciled pipe that meet the standards of both standard pipe and line pipe.  Defendant-Intervenors Response Brief at 9-17.

This Court should reject Defendant-Intervenors' argument not just because it would be procedurally unfair to consider Defendant-Intervenors' testing results information that was never seen by Blue Pipe but also because substantial record evidence consisting of CBP's own testing results and the questionnaire responses of Blue Pipe and Saha Thai fully supports CBP's finding that Blue Pipe's imported merchandise was in fact dual-stenciled pipe.

### A.   It Would Be Procedurally Unfair to Consider Defendant-Intervenors' Testing Results of Blue Pipe's Imports That Were Never Available to Blue Pipe During CBP's EAPA Investigation

Defendant-Intervenors' argument relies on certain testing results of samples that they asserted were imported by Blue Pipe to argue that those pipes were "not compliant with API 5 L requirements for line pipe in numerous ways."  Defendant-Intervenors' Response Brief at 10. Defendant-Intervenors acknowledge that their testing results were submitted as part of their original EAPA allegation and were designated as business proprietary information, but that they treated the general conclusions of the testing as public information.  Defendant-Intervenors' Response Brief at 10, n. 4.  The fact that Defendant-Intervenors are only now disclosing these testing results publicly for the first time in their response brief just highlights the procedural unfairness of CBP's EAPA investigation and why these testing results do not merit giving CBP a "do-over" to find an alternative basis for their affirmative evasion determination.

Unlike antidumping and countervailing duty (AD/CVD) investigations before Commerce and the U.S. International Commission (ITC) that allow for the release of business proprietary information to authorized counsel under an administrative protective order, CBP's EAPA investigations do not have any procedural mechanism for confidential information to be disclosed to counsel for other parties.  Unlike AD/CVD petitions that are released to authorized counsel under administrative protective orders issued by Commerce or ITC, confidential EAPA allegations are not disclosed by CBP because CBP does not have any procedure that allows counsel to review confidential information submitted by other parties.

Although CBP's EAPA initiation notice summarized the general points from the Defendant-Intervenors' allegation four months after it was submitted, Blue Pipe (and Saha Thai) were never given the opportunity to review the original EAPA allegation to evaluate if there were any factual discrepancies that needed correcting or clarifying.  Blue Pipe could only react and respond to CBP's questionnaires without knowing the confidential information that was submitted in the original EAPA allegation that presumably was the basis of CBP's line of questioning to Blue Pipe in the EAPA investigation.

The confidential version of CBP EAPA investigation record was made available to the undersigned counsel for Blue Pipe only through this CIT appeal proceeding. Aside from those confidential documents that Blue Pipe (or Saha Thai) itself submitted in CBP's EAPA investigation, none of the other confidential documents submitted by Petitioners or CBP during the entire course of CBP's EAPA investigation were ever made available to Blue Pipe to review and to provide comments.  With limited incomplete access to the record evidence, Blue Pipe was procedurally handicapped in its ability to respond to CBP's questionnaire without fully understanding the basis and context of CBP's questions.

Because Blue Pipe did not have the opportunity to review the original EAPA allegation, Blue Pipe had no way to assess whether there were any issues with the information submitted by Defendant-Intervenor on its testing of Blue Pipe's products that could have been raised during the EAPA investigation.  For example, were there issues about how Defendant-Intervenors obtained the samples of pipe that were tested that may have called into question whether the pipes were actually exported by Blue Pipe or produced by Saha Thai? When and how were the sampled pipes tested purchased and/or imported? What documentation (e.g., invoices, mill certifications) accompanied the pipe when acquired by Petitioners?  Because of the non-transparent procedures by which CBP conducts EAPA investigations, Blue Pipe was denied any opportunity to review the confidential information submitted by Defendant-Intervenors or CBP and thus was compromised in its limited ability to defend its interests by not having access to the full record evidence being considered by CBP.

Defendant-Intervenors are incorrect in arguing that the Court should accept their testing results as true and accurate.  Defendant-Intervenors' testing results are uncontroverted only because no one other than CBP had access to those testing results.  CBP found that the testing information submitted by Defendant-Intervenor may have been relevant enough to justify the initiation of an EAPA investigation.  But CBP reasonably did not rely solely on Defendant-Intervenors' submitted testing results as a basis for its affirmative evasion determination. Perhaps CBP may have had questions about how Defendant-Intervenors obtained the pipe tested or about their testing methodologies.  Instead, CBP chose to conduct its own testing by selecting six specific Blue Pipe entries and taking samples of the pipe from those entries for its own laboratory testing. Although Defendant-Intervenors wish CBP had relied only on the testing results from their EAPA allegation, Defendant-Intervenors have not demonstrated that CBP

acted arbitrarily or unreasonably in considering the other record evidence of CBP's own testing results or Blue Pipe's and Saha Thai's submitted information in determining that Blue Pipe's products were in fact dual-stenciled pipe.

**B.     The Record Evidence Fully Demonstrates that Blue Pipe's Imports Were of Line Pipe**

Defendant-Intervenors' argument that their testing results definitively proves that Blue Pipe's pipe did not comply with API 5L standards for line pipe ignores the ample record evidence that supports CBP's ultimate determination that the merchandise in Blue Pipe's selected entries were in fact dual-stenciled line pipe.  Specifically, notwithstanding Defendant-Intervenors' complaint that CBP's testing was not enough, the record evidence of CBP's testing results still are substantial enough to support CBP's finding that Blue Pipe's products were in fact dual-stenciled pipe.  Also, the record evidence from Blue Pipe's and Saha Thai's responses to CBP's EAPA initial and supplemental questionnaires are undisputed by Defendant-Intervenor and also support CBP's finding that Blue Pipe's products were in fact dual-stenciled pipe.

**1.     CBP's Own Testing Results Support a Finding that Blue Pipe's Products Were Dual-Stenciled Pipe**

The record evidence of CBP's own independent testing and analysis of the merchandise in Blue Pipe's entries fully supports CBP's determination that Blue Pipe entered dual-stenciled pipe.  In each of CBP's laboratory reports, the laboratory analysis indicated that each of the six samples tested were "composed of carbon steel and the chemical composition is consistent with the chemical requirements of ASTM A53 Grade A and API 5L PSL1 Pipe Grade A."  Appx 5080-5092 (PV); Appx17074-17085 (CV) (CBP Laboratory Reports). CBP's laboratory testing results also confirmed that each sample met the ultimate tensile strength requirements for ASTM A53 Grade A and API 5L PSL1 Pipe Grade A pipe.  *Id.*

Defendant-Intervenors object to CBP's testing of Blue Pipe's products because they allegedly were not as thorough or complete as Defendant-Intervenors' own testing and did not directly controvert Defendant-Intervenors' testing results.  Notably though, Defendant-Intervenors do not challenge the accuracy or reliability of CBP's testing results on the chemical composition and ultimate tensile strength of Blue Pipe's tested products.

For the more limited purpose of determining if the sampled product met the key API specifications, CBP acted reasonably in focusing on chemical composition and ultimate tensile strength to evaluate whether the products in Blue Pipe's entries were dual-stenciled pipe as they were declared on the entry summaries.  Defendant-Intervenor has not adequately explained why CBP's testing was invalid just because it was more limited in the scope of characteristics tested.  Just because a more exhaustive testing could have been performed by CBP does not undermine the credibility of CBP's testing results which still support CBP's determination that Blue Pipe's products were dual-stenciled pipe.  Ultimately, Defendant-Intervenor cannot point to anything that shows that CBP's findings that Blue Pipe's products were dual-stenciled pipe was not supported by substantial evidence.

### 2.    Blue Pipe's and Saha Thai's EAPA Questionnaire Responses Support CBP's Finding that Blue Pipe's Products Were Dual-Stenciled Pipe

Defendant-Intervenors also disregard all of the record evidence that Blue Pipe and Saha Thai submitted in response to CBP's questionnaires that specifically asked for documentation such as mill certificates that would support that the products imported were actually dual-stenciled pipe.

Blue Pipe in its initial questionnaire response provided Saha Thai's brochure which showed their abilities to produce ASTM and API 5L products.  Appx1606-1608 (PV), Appx10382-10384 (CV) (Appendix C1 - Saha Thai brochure).  The Saha Thai brochure includes

specifications for line pipe that meet API 5L specifications, identifying the relevant criteria for nominal size designation, outer diameter, weight, wall thickness, inner diameter, pipe grade, total pressure (psi), and chemical composition, yield strength, tensile strength, elongation, weld seam tensile strength.  Saha Thai also submitted these same brochures in its CBP RFI questionnaire responses.  Appx11493-11495 (Saha Thai Apr. 10 2020 RFI Response, Exhibit 2 – Saha Thai product brochure).

Blue Pipe also submitted copies of the Saha Thai API certificates.  Appx1614-1615 (PV), Appx10390-10391 (CV) (Appendix C2 - Saha Thai's API certificates).  In Saha Thai's initial RFI questionnaire response, Saha Thai provided its API certificates that authorized Saha Thai to use official API monogram for producing API 5L pipes. Appx14343-14344 (Saha Thai April 10, 2020 response, Exhibit 23). Saha Thai in its response explained that it had been able to manufacture API 5L pipes or line pipe since 2011. Appx2497 (PV) Appx11387 (CV) (Saha Thai April 10, 2020 response at 3).

In Saha Thai's supplemental questionnaire response, Saha Thai explained that companies are not required to be certified by API in order to produce products that meet API specifications; rather, in order to use the API monogram, companies must be certified by API.  Appx2763-2764 (PV); Appx14482-14483 (CV) (Saha Thai May 29, 2020 supplemental response).  Saha Thai explained that although companies may be able to produce the same quality of products without API certification, companies that go through the extensive process to obtain API certification gain a marketing advantage for customers who prefer to purchase pipe products that have the API monogram over those that do not have the API monogram.  Id.  Saha Thai provided documentation of API's monogram program and the requirements to obtain API licensing. Appx2774-2791 (Saha Thai supplemental response, Exhibit 1).

Saha Thai explained that after it first attained API certification in May 2011, it experienced severe flooding that caused significant damage to its production facilities that resulted in the temporary closure of Saha Thai's production facility.  Saha Thai therefore did not renew the API monogram certification when it expired in 2014. Appx2763-2764; Appx14483-14484 (Saha Thai supplemental response).  However, Saha Thai explained that it submitted its application for API certification in [

].  *Id.*  Although there is a gap in the effective dates of the API certifications due to the temporary shutdown of Saha Thai's facility caused by the flooding damage, Saha Thai fully explained that it was capable of producing API 5L products throughout the entire EAPA period of investigation as it began the API monogram certification process before the start of the EAPA period of investigation.

Saha Thai's API certificates also identify the Saha Thai products covered by the scope of this particular license.  Included among the products covered by Saha Thai's API certificate were "Line Pipe Threaded and Coupled."  Appx1614.  The fact that API's certificate specifically covered line pipe that was threaded and coupled indicates that API was satisfied that Saha Thai was capable of producing line pipe that met its standards for threading and coupling.  The API certificate thus directly refutes Defendant-Intervenors' argument that CBP's laboratory testing reports were not comprehensive enough because they did not examine whether the pipe met API requirements for couplings or threading.  Defendant-Intervenors' Response Brief at 13.  Although CBP reasonably chose to focus its testing on what it believed to be the primary characteristics of the API standards, CBP's more limited testing does not create a testing credibility gap because the API certificate issued to Saha Thai represents conclusive evidence

that API was satisfied that Saha Thai's threading and coupling production capability met the API specifications.

Blue Pipe submitted mill test certificates for twenty sales transactions selected by CBP as part of the comprehensive entry package documentation requested by CBP.  *See, Apr. 24, 2020 Blue Pipe RFI Response,* Appendix E.  Mill certs.  Saha Thai submitted these same mill test certificates in its CBP EAPA questionnaire response.  *See, April 10, 2020 Saha Thai RFI Response*, Exhibit 12.  In Attachment 1, we have provided a worksheet that summarizes the mill test reports from four of the twenty transactions entry packages submitted by Blue Pipe and Saha Thai along with worksheets highlighting the relevant information on each mill test report that indicates compliance with API 5L specifications.  Attachment 1 (summarizing information from mill test reports submitted in Saha Thai's April 10, 2020 RFI Response at Exhibit 12. Appx12096-12122 (Exh 12-2); Appx12190-12213 (Exh 12-4); Appx12380-12381 (Exh 12-8); Appx12415-12421 (Exh 12-9).

Defendant-Intervenors completely ignore these Saha Thai mill test reports.  Defendant-Intervenors do not raise any challenge that these mill test reports are somehow not accurate or not credible.  Nor do they even suggest that these documents are unreliable for demonstrating the product characteristics of the products imported in each entry.  Instead, Defendant-Intervenors argue that the only credible documents that CBP and this Court should consider are their testing results that they submitted in their original EAPA allegation. However, it is well established that under the substantial evidence standard of review "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n,* 383 U.S. 607, 620 (1966). Here, the record contains more than substantial evidence from CBP's own independent testing as

well as from the mill test reports from Blue Pipe's and Saha Thai's questionnaire response to support CBP's determination that the merchandise imported by Blue Pipe during the period of investigation was in fact was dual-stenciled pipe.

## III.   THE COURT SHOULD NOT GIVE CBP ANY LEEWAY IN ANY REMAND PROCEEDING

Although Defendant-Intervenors agree with Blue Pipe that CBP essentially ignored most of the record evidence gathered from CBP's EAPA investigation and instead relied solely on Commerce's original scope ruling, Defendant-Intervenors believe that this means CBP should be given more leeway to reconsider any and all evidence in any remand proceeding to find an alternative basis for its affirmative evasion determination.  Defendant-Intervenors' Response Brief at 17.  We disagree.

CBP's treatment of the information submitted in Blue Pipe's and Saha Thai's questionnaire responses in this EAPA investigation can easily be distinguished from the cases cited by Defendant-Intervenors as standing for the proposition that CBP should be allowed to come up with alternative grounds to justify an affirmative evasion determination in any remand proceeding.  For example, Defendant-Intervenors cite to a case in which the Court granted Commerce's request for a remand to articulate a lawful basis for the regulation in question. Defendant-Intervenors' Response Brief at 19 (citing *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. V. United States*, 483 F. Supp. 3d 1253, 1272 (Ct. Int'l Trade 2020) ("*Lumber*").  This *Lumber* case, however, involved only a legal question of whether the statutory authority cited by Commerce provided a legal basis for the regulations that provided for expedited reviews.  Unlike Blue Pipe's EAPA case, this *Lumber* case did not involve any factual issues based on the record evidence presented below, but rather involved just the legal analysis of the statutory basis for Commerce's regulation to consider whether that regulation should be

deemed invalidated.  In contrast to *Lumber*, CBP in this EAPA investigation would have to focus primarily on factual issues that it already had the opportunity to address but chose not to cite as a basis for its evasion determination.

Defendant-Intervenors also cite to *Inner Mongolia* as a case in which the CIT allowed Commerce on remand to find a separate alternative ground to rescind an antidumping new shipper review.  Defendant-Intervenors' Response Brief at 19 (citing *Inner Mongolia Jianlong Biochemical Co. v. United States*, 337 F. 3d 1329, 1334 (Ct. Int'l Trade 2018)). Defendant-Intervenors, however, overlook that Commerce in *Inner Mongolia* had originally rescinded the new shipper review but offered multiple bases for its rescission determination.  Although Commerce on remand acknowledged that its determination to rescind the new shipper review for one of those reasons (i.e., because the request for the new shipper review was inadequate) could not be supported by substantial analysis, Commerce on remand found that its "prior, alternative basis" for rescinding the new shipper review because the respondent had made a *non-bona fide* sale was still supported by substantial evidence.  *Inner Mongolia*, 337 F. Supp. 3d at 1334-1335. Commerce's remand analysis in *Inner Mongolia* was merely revisiting and expanding upon an alternative justification (i.e., sale was not *bona fide*) that it had previously addressed in the underlying review, and was not making up a brand new justification based on previously unconsidered record evidence.

Commerce's actions in *Inner Mongolia* are in stark contrast to CBP's treatment of the record evidence in this EAPA investigation.  CBP in this case reviewed thousands of pages of Blue Pipe's and Saha Thai's questionnaire responses but ultimately decided not to cite to any of that record evidence presumably because it was not relevant or probative enough to support an alternative basis for its evasion finding. Unlike *Inner Mongolia*, CBP in this case would not be

revisiting a separate alternative basis that it had previously considered and addressed fully in the underlying EAPA investigation.  Instead, CBP on remand would be coming up with a brand new alternative basis for duty evasion that it had affirmatively chosen not to address in the original final EAPA determination.  CBP should have to live with that choice and should not be given another opportunity to revisit that record evidence to try to craft a brand new alternative justification for evasion.

Defendant-Intervenors' request for the Court to give CBP free rein to reconsider all of the evidence on remand and reach an alternative basis for its affirmative EAPA determination should be rejected by this Court.  Defendant-Intervenors response brief relies primarily on a rehash of its claims from its original EAPA allegation that Saha Thai was not capable of producing line pipe. However, most of Defendant-Intervenors' original EAPA allegation lacks credibility as CBP through the course of its investigation already either found record evidence that directly refuted the allegations or found the allegations to be irrelevant to CBP's evasion analysis.  CBP should not be given a second chance to reconsider the record evidence related to all allegations just because Defendant-Intervenors wants to give CBP a chance to change their mind.

For example, in the original EAPA allegation Defendant-Intervenors claimed that Blue Pipe and Saha Thai were affiliated with each other.  But CBP during the investigation fully examined the corporate structure of Blue Pipe and Saha Thai and collected information that directly refuted these affiliation allegations.  *See, RAAAS Summary of Facts/ Analysis*, Sep. 9, 2020 at 2-3.  Appx17091-17092.  Moreover, CBP specifically noted that "{t}he question of whether Blue Pipe and Saha Thai are (or were) affiliated is not a factor in our ultimate

13

conclusion in this administrative review.  *Jan. 27, 2021 EAPA Review Determination* at 12. Appx17127.

Similarly, Defendant-Intervenor in the original EAPA allegation claimed that the shift in timing of Blue Pipe's and Saha Thai's imports of pipe products was indicative of Blue Pipe's duty evasion.  But CBP in its final EAPA determination specifically noted that the issue of intent is not generally germane to an EAPA investigation and thus did not "rely on the timing of the imports in question or the shifts in pattern of trade."  See *Jan. 27, 2021 EAPA Review Determination* at 12-13. Appx17127-17128.

Just as CBP rejected Defendant-Intervenors' allegations of affiliation and patterns of trade shifts as unfounded or irrelevant, Defendant-Intervenors' allegation that Saha Thai was not capable of producing line pipe was also fully considered by CBP during the EAPA investigation. As noted above, Blue Pipe and Saha Thai submitted ample information and documentation regarding Saha Thai's production of pipe that met API 5L specifications that directly refuted those allegations.  Given that so much of the original EAPA investigation has already been discredited, it would be inappropriate for this Court to now accept Defendant-Intervenors' argument and give CBP another chance to reconsider this evidence that CBP already considered and concluded that it supported a finding that Blue Pipe's imported products were actually dual-stenciled pipe.

## IV.    IF NECESSARY, THE COURT SHOULD DIRECT CBP TO AMEND THE EFFECTIVE DATE OF CBP'S DUTY EVASION DETERMINATION

As noted above, Defendant agrees with Blue Pipe that CBP's duty evasion determination cannot be sustained by this Court if the Federal Circuit affirms this Court's rulings in *Saha Thai* because CBP can no longer satisfy the necessary statutory requirements (i.e., no covered

merchandise, no material false statement, no evasion of AD requirements) now that Commerce has determined that dual-stenciled pipe is not within the scope of the AD Order. None of Blue Pipe's entries of dual-stenciled pipe should be subject to any AD duties. Defendant concurs that the issue of the timing of the effective date of CBP's duty evasion determination would be rendered moot if the Court rules that CBP's duty evasion determination is invalid in its entirety. Defendant's Response Brief at 12.

If, however, this Court finds that CBP's duty evasion determination is still valid, the issue of the effective date for CBP's duty evasion determination would still remain outstanding. Defendant argues that CBP's enforcement authority under EAPA is not bound by Commerce's scope rulings in any way because EAPA grants CBP with separate and independent authority. Defendant's Response Brief at 13-14. Defendant argues that CBP was within their authority to suspend liquidation on Blue Pipe's entries beginning October 18, 2018, even though Commerce set an effective date for its Final Scope Ruling of November 22, 2019, which was the initiation date of Commerce's scope inquiry of whether dual stenciled pipe was covered by the scope of the AD Order.

The EAPA statutory provisions state that only merchandise covered by an antidumping order may be including in an EAPA investigation of possible evasion 19 U.S.C. § 1517(a)(3), (a)(5)(A). Covered merchandise is defined as "merchandise that is subject to ... an AD order." 19 U.S.C. § 1517(a)(3); 19 C.F.R. § 165.1. Although Commerce in its original Scope Ruling stated that dual stenciled pipe could be considered merchandise subject to the AD order on Circular Welded Carbon Steel Pipes and Tubes from Thailand only after November 22, 2019, CBP states that it nonetheless still had the authority to apply its EAPA determination before that date.

CBP does not explain how entries before November 22, 2019 can be considered "covered merchandise" contrary to the effective date set by Commerce's Scope Ruling. CBP merely states that the EAPA statute grants CBP with such broad enforcement authority that it is not bound by Commerce's timeline. Instead, CBP essentially argues that it can arbitrarily pick any date as the effective date for its EAPA evasion determination, regardless of whatever effective date Commerce may have provided in their scope rulings.

In this case, CBP's decision to disregard Commerce's decision on the effective date of the scope ruling is particularly incongruous given that CBP otherwise relied entirely on Commerce's scope ruling for determining that dual-stenciled pipe was within the scope of the AD Order. Although CBP argues they have separate and independent authority under EAPA, in this particular EAPA investigation, CBP chose to rely solely on Commerce's scope ruling to determine (incorrectly) that dual-stenciled pipe was within the scope of the Orders. CBP did not exercise any of their independent authority to use any of the information gathered in its own EAPA investigation as the basis for their determination in this case. CBP cannot credibly assert it was exercising its own independent authority when it has expressly stated it was relying on Commerce's scope ruling for its evasion determination. CBP arbitrarily decided to accept only the part of Commerce's Scope Ruling that it found relevant and controlling (i.e., whether dual-stenciled pipe was within scope), but ignored the other part where Commerce specifically set an effective date for its scope ruling. CBP arbitrarily and unlawfully expanded the scope coverage to Blue Pipe's entries made before the effective date of Commerce's scope ruling.

Because CBP's definition for "covered merchandise" under the EAPA statute is defined as merchandise subject to an AD/CVD order, and only Commerce has the ultimate authority to make such scope rulings, CBP must defer to Commerce's scope rulings in their entirety. There

16

is no legal basis for CBP to defer only to Commerce's decision on what products are covered by the scope definition, but not to Commerce's decision on the effective date of its scope rulings.

CBP's determination to extend the effective date of its evasion determination to before Commerce's scope ruling effective date also raises questions on whether Blue Pipe made a material false statement as required by the EAPA statute.  See, *Diamond Tools Tech. LLC v. United States*, CIT Ct. No. 20-00060, Slip Op 22-145 (Dec. 16, 2022).  This Court has rejected CBP's argument that the EAPA statute does not require a finding of intent or culpability in the context of evasion under the EAPA.

CBP originally based its material false statement finding on Blue Pipe's declaration of the entry as a "Type 01" rather than a "Type 03" entry subject to antidumping duties.  Here, Blue Pipe declared the entry as a Type 01 entry because the scope definition included an express exclusion for line pipe and the products in Blue Pipe's entry were dual-stenciled pipe and simultaneously met the specifications for both standard pipe and line pipe.  At the time of entry, Blue Pipe's entry declaration was a true and accurate statement. Blue Pipe's entry declaration became a false and inaccurate statement only after Commerce made its scope ruling, which was well after Blue Pipe submitted that entry declaration.

Although Commerce's original scope ruling determined that dual-stenciled pipe was within the scope of the order, Commerce set an effective date of the initiation date of the scope inquiry because that is the date by which importers are presumed to have notice that the products subject to the scope inquiry may be subject to the AD Order.  Before that initiation date for Commerce's scope inquiry, importers would not have sufficient notice that their products could be subject to the AD order so that they could accordingly adjust their decision whether to import those products or not.  CBP's determination to extend the EAPA evasion determination to entries

before the effective date of Commerce's scope ruling precludes importers from having any realistic chance of knowing at the time of entry that their products are at risk of being within the scope of the Order.  It would be unfair to punish Blue Pipe for an incorrect entry declaration when those entries were made even before CBP initiated its EAPA investigation or Commerce initiated its scope inquiry which would have given notice that its entries might be subject to the AD order when the scope inquiry was initiated only after the entries were made?

In sum, in the event that this Court still finds CBP's duty evasion determination legally valid, we request that this Court find that the effective date of CBP's duty evasion determination should be revised so that it applies only to Blue Pipe's entries made on or after the initiation date of Commerce's scope inquiry (i.e., November 22, 2019).

## V.       CONCLUSION

For the reasons discussed above, Blue Pipe respectfully requests that the Court hold that CBP's determinations that Blue Pipe entered covered merchandise into the United States through material false statements that resulted in Blue Pipe evading the payment of antidumping duties were arbitrary and capricious, an abuse of discretion and were not in accordance with law. Pursuant to this Court's rulings in *Saha Thai*, Commerce has amended its Final Scope Ruling and now has determined that dual stenciled pipe is not within the scope of the AD Order.  Blue Pipe requests that the Court remand this matter to CBP with instructions to reconsider its duty evasion determination in light of Commerce's Amended Final Scope Ruling.

Even if the Court finds that CBP's duty evasion determination as lawful, Blue Pipe requests that the Court find that CBP's decision to apply that determination to entries made before DOC had initiated its scope inquiry on whether dual-stenciled pipe was subject

merchandise was arbitrary and capricious, an abuse of discretion and was not in accordance with law.

We request that this Court award Plaintiff a judgment for costs, including reasonable attorney fees, in accordance with the Equal Access to Justice Act 28 U.S.C. § 2412.

We request that this Court grant Plaintiff such additional relief as the Court may deem just and proper.

Respectfully submitted,

___/s/ Adams C. Lee___
Adams C. Lee
HARRIS BRICKEN SLIWOSKI LLP
600 Stewart Street, Suite 1200
Seattle, WA 98101
(206) 264-5457
Counsel to Blue Pipe Steel Center Co., Ltd.

# Attachment 1

Saha Thai's April 10, 2020 RFI Response at Exhibit 12

p. 1 – Summary of Exh 12-2, 4, 8, 9
p.2 – Exh 12-2 (Appx12096-12122)
p.3 - Exh 12-4 (Appx12190-12213)
p.4 - Exh 12-8 (Appx12380-12381)
p. 5 -Exh 12-9 (Appx12415-12421).

# Not Susceptible to Public Summary

**<ins>Certificate of Compliance with Chambers Procedure 2(B)(1)</ins>**

The undersigned hereby certifies that the foregoing reply brief contains 5,380 words, exclusive of the table of contents, table of authorities, and certificates of counsel, and therefore complies with the maximum 7,000 word count limitation set forth in the Standard Chambers Procedures of the U.S. Court of International Trade.


BY: <ins>/s/Adams C. Lee</ins>
     Adams C. Lee