# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN

| | |
|---|---|
| BLUE PIPE STEEL CENTER CO., LTD., | : |
| Plaintiff, | : |
| v. | : Court No. 21-00081 |
| UNITED STATES OF AMERICA; | : |
| Defendant, | : |
| WHEATLAND TUBE COMPANY and NUCOR TUBULAR PRODUCTS INC. | : |
| Defendant-Intervenors. | : |

## PLAINTIFF BLUE PIPE'S SUPPLEMENTAL BRIEF

Adams C. Lee
HARRIS SLIWOSKI LLP
600 Stewart Street, Suite 1200
Seattle, WA 98101
(206) 224-5657

April 18, 2025

Plaintiff Blue Pipe Steel Center Co. Ltd. ("Blue Pipe"), submits this supplemental brief to address the merits of the case in light of the Federal Circuit's May 15, 2024 decision in *Saha Thai*.[1] The Federal Circuit in *Saha Thai* held that, contrary to the CIT's decision in *Saha Thai II*,[2] Commerce's *Scope Ruling* that imports of dual-stenciled pipes fall within the scope of the antidumping order on Circular Welded Carbon Steel Pipes and Tubes from Thailand ("Thai AD Order") was reasonable and supported by substantial evidence.

In light of the Federal Circuit's decision to affirm Commerce's scope ruling that dual-stenciled pipes are within the scope of the Thailand AD Order, Blue Pipe acknowledges that its challenges to the duty evasion determinations of the U.S. Customs and Border Protection ("CBP" or "Customs") in the Enforce and Protect Act ("EAPA") investigation (EAPA Case Number 7401)[3] are mostly no longer applicable. The Federal Circuit's decision reversed this Court's decision in *Saha Thai II*, which had been the primary basis for our challenge to CBP's final EAPA determination of Blue Pipe's duty evasion.

Although Blue Pipe acknowledges that CBP's EAPA duty evasion determination now should be affirmed in light of the Federal Circuit's affirmance of Commerce's scope ruling, we note the only remaining issue is the timing of the effective date of CBP's EAPA determination. As noted in pages 22-25 of its initial brief and pages 14-18 of its reply brief to this Court, Blue Pipe respectfully submits that the effective date of CBP's EAPA determination should be from

---

[1] *Saha Thai Steel Pipe Public Co., Ltd. v. United States*, No. 22-2181 (Fed. Cir. May 15, 2024)
[2] *Saha Thai Steel Pipe Public Co., Ltd. v. United States*, 592 F. Supp. 3d 1299 (Ct. Int'l Trade 2022) (CIT "*Saha Thai II*").
[3] CBP's Trade Remedy Law Enforcement Directorate ("TRLED") Notice of Final Determination as to Evasion, September 11, 2020 ("*Sep. 11, 2020 Initial EAPA Determination*"); CBP's Office of Trade Regulations & Rulings Administrative Review Determination of EAPA Case Number 7401 ("*Jan. 27, 2021 EAPA Review Determination*").

1

the initiation date of Commerce's scope inquiry (i.e., November 22, 2019) rather than October 18, 2018 which is the date CBP began to suspend liquidation of Blue Pipe's entries.

As noted in Blue Pipe's briefs, because CBP's duty evasion determination relied entirely on DOC's scope ruling and was not based in any way on any findings from its own EAPA investigation of Blue Pipe, it would be unfair to allow CBP to apply an earlier effective date for its EAPA "covered merchandise" determination that is prior to the initiation date of Commerce's scope inquiry. Any importer of Blue Pipe dual stenciled pipe would not have had any reasonable notice that dual stenciled pipe was in scope merchandise prior to the initiation of Commerce's scope inquiry.

The circumstances of this case are particularly unique in that the Thai AD Order was originally issued in 1986, more than thirty years before Commerce's initiation of the scope inquiry on dual-stenciled pipe. As the Court noted in *Saha Thai II*, there were multiple ITC sunset reviews in which dual-stenciled pipe was specifically acknowledges as being *not within* the scope of the antidumping orders on standard pipes.[4] Any argument that dual-stenciled pipe has always been covered merchandise based on the plain language of the scope language of the Thai AD Order is belied by record evidence of the ITC's sunset review determinations that established the prevailing industry understanding, including those of Petitioners, for more than thirty years was that dual-stenciled pipe was not within the scope of the AD Order on standard pipes. Applying an effective date for CBP's duty evasion determination prior to Commerce's scope initiation date would be procedurally unfair as importers would have had no notice before

---

[4] *Saha Thai II*, at 10-13 (citing to First (2000), Second (2006), Third (2012), and Fourth (2018) ITC Sunset Reviews).

2

Commerce's scope initiation date that they should even question whether dual stenciled pipe was in scope merchandise.

This scope issue regarding dual-stenciled pipe is hardly a simple straightforward interpretation of obvious plain language of a scope definition. For over thirty years of the Thai AD Order, as evidenced by the ITC sunset reviews, the industry generally treated dual-stenciled pipe as outside the scope. Only in January 2019 did Petitioners allege that certain Thai pipe was circumventing the Thai AD Order. In November 2019, Commerce self-initiated its scope inquiry on whether dual-stenciled pipe was just standard pipe with minor alterations. The lengthy litigation in *Saha Thai* and this case further establishes the difficulty and complexity of this scope issue. Given the extended history of dual-stenciled pipe being considered outside the scope ever since the Thai AD order was issued in 1986, regardless of the Federal Circuit's decision to ultimately uphold Commerce's scope ruling, it is simply not credible for CBP or Petitioners to assert that importers should have always known that dual stenciled pipe was covered merchandise based solely on the scope language.

Thus far, CBP has not offered any explanation of how importers could have possibly known that entries of dual-stenciled pipe was covered merchandise prior to the initiation date of Commerce's scope inquiry. CBP merely cites the EAPA statute as saying it has very broad enforcement authority and that it is not bound by Commerce's determinations or timeline.

Although the EAPA statute gives CBP independent enforcement authority, CBP in this particular appeal made its final EAPA determination of Blue Pipe's evasion based entirely on Commerce's scope ruling that dual stenciled pipe was within the scope of the Thai AD Order. Defendant's Response Brief at 10-12 ("*Saha Thai* controls the outcome of this case because it removes the fundamental predicate for CBP's duty evasion determination" and "the only

3

question is whether that type of pipe {dual-stenciled pipe} is covered by the AD Order."). Defendant also acknowledged that it was "irrelevant" that CBP may have had independent authority to determine whether Blue Pipe's specific imports were merchandise covered by the scope of the AD Order because CBP's EAPA duty evasion determination was based solely on Commerce's scope ruling. Defendant's Response Brief at 10 ("it is immaterial whether CBP was asserting independent authority as the product was not within the scope of the AD Order.").

Because CBP in this case relied entirely on Commerce's scope ruling, CBP in this case must abide by not just merits of Commerce's scope ruling but also the timeline of Commerce's scope ruling. Since Commerce determined that dual stenciled pipe was in scope merchandise only for entries on or after its scope initiation date (i.e., November 22, 2019), entries before that date were not in scope merchandise according to Commerce. CBP provides no argument as to why it can extend the effective date of Commerce's scope ruling even though it acknowledges that it is relying entirely on Commerce's scope ruling for its covered merchandise determination. CBP essentially argues that it can arbitrarily pick any date as the effective date for its EAPA evasion determination, regardless of whatever effective date Commerce may have provided in their scope rulings.

CBP originally based its material false statement finding on Blue Pipe's declaration of the entry as a "Type 01" rather than a "Type 03" entry subject to antidumping duties. At the time of entry, Blue Pipe's entry declaration was a true and accurate statement. Blue Pipe's entry declaration became a false and inaccurate statement only after Commerce made its scope ruling, which was well after Blue Pipe submitted that entry declaration. Pursuant to the effective date of Commerce's scope ruling, Blue Pipe's entries on or after Commerce's scope initiation date became a material false statement. But for entries prior to Commerce's scope initiation date

4

those entries were not made pursuant to a material false statement because they were prior to the effective date of Commerce's scope ruling. CBP does not explain how an importer can make a false statement on an entry declaration for an entry prior to Commerce's effective date.

If CBP is going to rely solely on Commerce's scope ruling to determine that dual-stenciled pipe was within the scope of the Order, CBP should also be bound by Commerce's timelines as CBP admittedly was not relying on any of its own factual or legal analysis or determinations from its own EAPA investigation that otherwise may have justified its selection of an earlier effective date. CBP acted arbitrarily in accepting only the part of Commerce's Scope Ruling that it found relevant and controlling (i.e., whether dual-stenciled pipe was within scope), but ignoring the other part where Commerce specifically set an effective date for its scope ruling. We respectfully submit that CBP arbitrarily and unlawfully expanded the scope coverage to Blue Pipe's entries made before the effective date of Commerce's scope ruling.

Respectfully submitted,

\_\_\_/s/ Adams C. Lee\_\_\_
Adams C. Lee
HARRIS SLIWOSKI LLP
600 Stewart Street, Suite 1200
Seattle, WA 98101
(206) 264-5457
Counsel to Blue Pipe Steel Center Co., Ltd.

5

**Certificate of Compliance with Chambers Procedure 2(B)(1)**

The undersigned hereby certifies that the foregoing supplemntal brief contains 1,485 words, exclusive of the table of contents, table of authorities, and certificates of counsel, and therefore complies with the maximum 7,000 word count limitation set forth in the Standard Chambers Procedures of the U.S. Court of International Trade.

BY: /s/Adams C. Lee
Adams C. Lee