Slip Op. 25-126

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **BLUE PIPE STEEL CENTER CO., LTD.,** | |
| Plaintiff, | |
| v. | |
| **UNITED STATES,** | Before: Timothy M. Reif, Judge |
| Defendant, | Court No. 21-00081 |
| and | |
| **WHEATLAND TUBE COMPANY AND NUCOR TUBULAR PRODUCTS INC.** | |
| Defendant-Intervenors. | |

## OPINION

[Denying plaintiff's motion for judgment on the agency record and sustaining the finding of evasion of U.S. Customs and Border Protection.]

Dated: September 25, 2025

Adams C. Lee, Harris Bricken McVay Sliwoski, LLP, of Seattle, WA, for plaintiff Blue Pipe Steel Center Co., Ltd.

Robert R. Kiepura, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant United States. With him on the briefs were Yaakov M. Roth, Acting Assistant Attorney General, Patricia M. McCarthy, Director and Franklin E. White, Jr., Assistant Director. Of counsel was Tamari J. Lagvilava, Senior Attorney, Enforcement & Operations, Office of Chief Counsel, U.S. Customs and Border Protection, of Washington, D.C.

Roger B. Schagrin, Luke A. Meisner and Christopher T. Cloutier, Schagrin Associates, of Washington, D.C., for defendant-intervenor Wheatland Tube Company. Alan H. Price, Robert E. DeFrancesco III, Elizabeth S. Lee and Theodore P. Brackemyre, Wiley Rein LLP, of Washington, D.C., for defendant-intervenor Nucor Tubular Products, Inc.

* * *

Reif, Judge:  Before the court is the motion for judgment on the agency record of Blue Pipe Steel Center Co., Ltd. ("plaintiff" or "Blue Pipe").  Corrected Mem. of P. & A. in Supp. of Pl.'s Rule 56.2 Mot. for J. on the Agency R. ("Pl. MJAR Br."), ECF No. 55.  Plaintiff challenges the determination of U.S. Customs and Border Protection ("Customs") that plaintiff was evading the antidumping ("AD") order on circular welded carbon steel pipes and tubes from Thailand.  *Id.*; Compl. ¶ 1, ECF No. 2; *see also* Notice of Final Determination as to Evasion ("Evasion Determination"), EAPA Case No. 7401 (Sep. 11, 2020), APPX17106-APPX17114, ECF No. 79.

For the reasons discussed below, the court denies plaintiff's motion for judgment on the agency record and sustains the evasion determination of Customs.

## BACKGROUND

On March 11, 1986, the U.S. Department of Commerce ("Commerce") issued the AD order on certain circular welded carbon steel pipes and tubes from Thailand. *Antidumping Duty Order; Circular Welded Carbon Steel Pipes and Tubes from Thailand* ("*Order*"), 51 Fed. Reg. 8,341 (Dep't of Commerce Mar. 11, 1986).

On October 4, 2019, domestic producers of circular welded carbon steel pipes and tubes filed an evasion allegation with Customs pursuant to the Enforce and Protect Act ("EAPA"), section 517 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1517,[1] enacted as Title IV, section 421 of the Trade Facilitation and Trade Enforcement Act of 2015.  See Request for an Investigation under the Enforce and Protect Act of Independence Tube Corporation, a Nucor Company, Southland Tube, Inc. and

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code, 2018 edition.

Wheatland Tube Company, EAPA Case No. 7401 (Oct. 4, 2019), APPX8000-APPX8021; Compl. ¶ 13.

On November 8, 2019, the Trade Remedy Law Enforcement Directorate ("TRLED") within the Customs' Office of Trade initiated an investigation under EAPA as the result of these allegations as to evasion of AD duties by Blue Pipe. *See* Notice of Initiation of Investigation, EAPA Case No. 7401 (Feb. 13, 2020), APPX9871-APPX9876; Compl. ¶ 16. The initiation notice stated that "[t]he entries covered by the investigation are those entered for consumption, or withdrawn from warehouse for consumption, from October 18, 2018, through the pendency of this investigation." Notice of Initiation of Investigation at APPX9873 (citing 19 C.F.R. § 165.2).

On June 30, 2020, Commerce issued a final scope ruling in which it determined that dual-stenciled pipe is within the scope of the *Order*. *See* Evasion Determination at APPX17112; Compl. ¶¶ 20-21.

On September 11, 2020, Customs issued the evasion determination, which stated that "there is substantial evidence that [Blue Pipe] entered merchandise covered by [the *Order*] into the customs territory of the United States through evasion." Evasion Determination at APPX17107-APPX17108. In light of the scope ruling of Commerce, Customs determined that "Blue Pipe evaded the [*Order*] by not entering dual stenciled pipe from Thailand as Type 03 entries and posting the appropriate cash deposits." *Id.* at APPX17113.

Pursuant to the affirmative determination of evasion, Customs "suspend[ed] the liquidation for all entries imported by Blue Pipe that are subject to EAPA investigation

7401 for the period of investigation, October 18, 2018, through September 11, 2020." *Id.* at APPX17114.

On October 23, 2020, Blue Pipe requested de novo administrative review of the evasion determination by Customs' Office of Regulations and Rulings ("R&R"). Office of Regulations and Rulings Administrative Review, EAPA Case No. 7401 (Jan. 27, 2021), at APPX17116-17117. On January 27, 2021, R&R affirmed the evasion determination. *Id.* at APPX17131.

On March 8, 2021, plaintiff filed its complaint in the instant action to challenge the evasion determination. *See* Compl. On December 14, 2022, plaintiff moved for judgment on the agency record pursuant to U.S. Court of International Trade Rule 56.2. Pl.'s Rule 56.2 Mot. for J. on the Agency R., ECF No. 50; Pl. MJAR Br.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1517(g)(1).

The Court reviews determinations and administrative reviews in evasion investigations to examine: (1) whether Customs "fully complied with all procedures under subsections (c) and (f)"; and (2) whether "any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1517(g)(2)(A)-(B).

An agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a

difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Id.* Even so, the agency "must examine the relevant data and articulate a satisfactory explanation for its action[,] including a 'rational connection between the facts found and the choice made.'" *Leco Supply, Inc. v. United States*, 47 CIT __, __, 619 F. Supp. 3d 1287, 1293 (2023) (alteration in original) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

"An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) (citing *Arnold P'ship v. Dudas*, 362 F.3d 1338, 1340 (Fed. Cir. 2004)).

## DISCUSSION

### I. Legal framework

A person determined to have entered covered merchandise into the United States through evasion, and an interested party that filed an allegation of evasion that resulted in initiation of an evasion investigation, may seek judicial review in this Court to assess whether the determination of evasion and subsequent administrative review process are conducted in accordance with 19 U.S.C. § 1517(c) (determinations) and (f) (reviews). 19 U.S.C. § 1517(g)(1).

The statute defines "evasion" as:

> [E]ntering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

*Id.* § 1517(a)(5)(A).

"Given the realities in the marketplace and everchanging varieties of merchandise, questions frequently arise as to whether a particular product is subject to or falls within the scope of an antidumping duty order." *Saha Thai Steel Pipe Pub. Co. v. United States*, 101 F.4th 1310, 1315 (Fed. Cir. 2024) (citing 19 C.F.R. § 351.225(a)). "U.S. trade law provides that an interested party may request that Commerce issue a scope ruling to clarify whether a particular product falls within the scope of the order." *Id.*

The U.S. Court of Appeals for the Federal Circuit (the "Federal Circuit") has recognized that "[t]here is no specific statutory provision governing the interpretation of the scope of antidumping or countervailing [duty] orders." *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351, 1354 (Fed. Cir. 2015); *Saha Thai*, 101 F.4th at 1323. Commerce's "regulations provide an analytical framework guiding Commerce's reasoning and analysis in reaching a scope ruling." *Saha Thai*, 101 F.4th at 1323.

II.     **Analysis**

In its motion for judgment on the agency record, plaintiff challenged several aspects of the evasion determination. *See* Pl. MJAR Br. Following the decision of the Federal Circuit in *Saha Thai*, however, plaintiff revised its position and now

"acknowledges that [Customs'] EAPA duty evasion determination . . . should be affirmed … [but] note[s] the only remaining issue is the timing of the effective date of [Customs'] EAPA determination." Pl.'s Supp. Br. ("Pl. Supp. Br.") at 1, ECF No. 71. Specifically, plaintiff contends that the effective date of the evasion determination "should be from the initiation date of Commerce's scope inquiry (i.e., November 22, 2019) rather than October 18, 2018[,] which is the date [Customs] began to suspend liquidation of Blue Pipe's entries." *Id.* at 1-2.

By contrast, defendant and defendant-intervenors argue that the current effective date of the evasion determination, October 18, 2018, is correct. *See* Def.'s Supp. Br. ("Def. Supp. Br."), ECF No. 72; Def.-Intervenors' Supp. Br., ECF No. 73.

The court concludes that the current effective date of the evasion determination, October 18, 2018, is proper.

Plaintiff argues that Customs' "duty evasion determination relied entirely on [Commerce's] scope ruling and was not based in any way on any findings from its own EAPA investigation of Blue Pipe" and that "it would be unfair to allow [Customs] to apply an earlier effective date for its EAPA 'covered merchandise' determination that is prior to the initiation date of Commerce's scope inquiry." Pl. Supp. Br. at 2. Plaintiff insists that because Customs relied entirely on Commerce's scope ruling, Customs in this case must abide by not just the merits of Commerce's scope ruling but also the timeline of Commerce's scope ruling. *Id.* at 4.

This Court has recognized that Customs' authority under EAPA "is independent of Commerce's authority under the AD/CVD provisions of U.S. law." *Diamond Tools Tech. LLC v. United States*, 45 CIT __, __, 545 F. Supp. 3d 1324, 1349 (2021).

With respect to "covered merchandise" referrals pursuant to 19 U.S.C. § 1517(b)(4), this Court in *Diamond Tools* stated that:

> To require that Customs be bound by Commerce's later circumvention timeline would restrict Customs' authority to find that [the importer's pre-evasion-inquiry] entries were "covered merchandise," thereby limiting Customs' enforcement authority under the EAPA with regard to those entries. Such an outcome would be contrary to the congressional intent underlying the EAPA statute and Customs' ability to exercise its statutory authority.

*Id.* at __, 545 F. Supp. 3d at 1351. The Court explained that "[t]he purpose of the EAPA was to empower the U.S. Government and its agencies with the tools to identify proactively and thwart evasion at earlier stages to improve enforcement of U.S. trade laws, including by ensuring full collection of AD and CVD duties."[2] *Id.*; *see also Vanguard Trading Co. v. United States*, Slip Op. 25-61, 2025 WL 1503581, at *11 (CIT May 19, 2025).

---

[2] In 2015, the Committee on Ways and Means in the U.S. House of Representatives released a report on the Trade Facilitation and Trade Enforcement Act of 2015. H.R. Rep. No. 114-114, pt. 1 (2015). This report demonstrates that Congress intended for EAPA — referred to as the ENFORCE Act in the House bill — to provide a specific timeline for evasion investigations. *Id.* Sander M. Levin, Ranking Member of the Committee, included the following statement in the Additional Views section:

> There appears to be growing consensus that ENFORCE is the appropriate way to address allegations of evasion. Prior efforts to require Customs to enforce these allegations by using existing statutory provisions (e.g., Section 516 of the Tariff Act of 1930) have failed by not requiring Customs to act on a petition within a fixed period of time. The longer Customs takes, the more entities are liquidated—that is, they become final, and any additional duties owing are foregone.

*Id.* at 381; *see also* S. Rep. No. 114-45, at 12 (2015).

Plaintiff's request that Customs' evasion determination conform to the timeline of Commerce's scope ruling would run counter to the language of the statute as buttressed by its legislative history.  *See Diamond Tools*, 45 CIT at __, 545 F. Supp. 3d at 1350-51.  There is nothing in § 1517 that prescribes the extent to which Customs may rely on a scope ruling of Commerce in reaching an evasion determination.  *See* 19 U.S.C. § 1517.  And in turn, there is nothing in the statute that pegs the effective date of an evasion determination to the date of a scope ruling of Commerce that Customs may have relied upon in reaching that determination.  *See id.*; *see also Diamond Tools*, 45 CIT at __, 545 F. Supp. 3d at 1349 ("[T]he interaction between Customs' EAPA investigations and Commerce's scope inquiries . . . is a novel one for which the statute provides no clear guidance.").  Given this silence, the court concludes that Customs' decision to set the effective date at the beginning of the period of investigation for the evasion inquiry accords with the "best reading" of § 1517 as well as with congressional intent.  *See Diamond Tools*, 45 CIT at __, 545 F. Supp. 3d at 1351; *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).

In the instant case, plaintiff argues that "[a]ny importer of Blue Pipe dual stenciled pipe would not have had any reasonable notice that dual stenciled pipe was in scope merchandise prior to the initiation of Commerce's scope inquiry."  Pl. Supp. Br. at 2.  Plaintiff notes that "[t]he circumstances of this case are particularly unique in that [the *Order*] was originally issued in 1986, more than thirty years before Commerce's initiation of the scope inquiry on dual-stenciled pipe."  *Id.*

The scope language in the final determination of the investigation preceding the *Order* is as follows:[3]

> The products under investigation are: certain circular welded carbon steel pipes and tubes, also known as "standard pipe" or "structural tubing," which includes pipe and tube with an outside diameter of 0.375 inch or more but not over 16 inches, or any wall thickness, as currently provided in items 610.3231, 610.3234, 610.3241, 610.3242, 610.3243, 610.3252, 610.3254, 610.3256, 610.3258 and 610.4925 of the Tariff Schedules of the United States Annotated.

*Antidumping: Circular Welded Carbon Steel Pipes and Tubes from Thailand; Final Determination of Sales at Less Than Fair Value* ("*Final Determination*"), 51 Fed. Reg. 3,384 (Dep't of Commerce Jan. 27, 1986).

In addition to positive scope language of this kind, the terms of an AD order may "expressly describe merchandise that, for whatever reason, is *excluded* from the scope." *Saha Thai*, 101 F.4th at 1324 (emphasis supplied). "Hence, the parties may argue that a particular product is not within the scope on the ground that it falls within an explicit exclusion expressed in the order." *Id.*; *see also Shenyang Yuanda*, 776 F.3d at 1358; *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1379 (Fed. Cir. 2017)

In affirming the scope ruling that arose from the scope *proceeding* that ran parallel to the instant evasion determination, the *Saha Thai* court noted that the *Order* "does not contain any exclusionary language." *Saha Thai*, 101 F.4th at 1328. For that reason, any purported exclusion of dual-stenciled pipe is not justifiable by way of a plain reading of the *Order* or the *Final Determination*.

---

[3] The *Order* itself does not provide scope language but cites instead to Commerce's final determination of sales at less than fair value in the same investigation. *See Order*, 51 Fed. Reg. 8,341.

Plaintiff asks the court to rely on the "multiple" sunset reviews of the U.S. International Trade Commission ("Commission") "in which dual-stenciled pipe was specifically acknowledge[d] as being *not within* the scope of the antidumping orders on standard pipes."[4]  Pl. Supp. Br. at 2*; Saha Thai*, 101 F.4th 1319-22.  But the *Saha Thai* court explicitly rejected "Saha's attempt to read references to exclusions in other [circular welded carbon steel pipes and tubes ("CWP")] orders," including the Commission sunset reviews, as "equally applying to the [*Order*]."  *Saha Thai*, 101 F.4th at 1330.  The court reasoned that "the sunset reviews summarize the [Commission's] assessment of various CWP orders resulting from separate investigations" that resulted in separate orders with "different scope terms."  *Id.*  The court noted that "[f]or instance, the 1992 CWP orders concerning imports from Brazil, Korea, Mexico, and Venezuela state that 'Standard pipe that is *dual or triple certified/stenciled* that enters the U.S. as line pipe of a kind used for oil or gas pipelines is [ ] *not included in these orders*.'"  *Id.* (second, third and fourth alterations in original) (citation omitted).  Such language is missing from the *Order*, which applies only to merchandise from Thailand.  *See Order*, 51 Fed. Reg. 8,341; *Final Determination*, 51 Fed. Reg. 3,384.

---

[4] *See Certain Pipe and Tube from Argentina, Brazil, Canada, India, Korea, Mexico, Singapore, Taiwan, Thailand, Turkey, and Venezuela*, USITC Pub. 3316, Inv. Nos. 701-TA-253, 731-TA-132, -252, -271, -273, -276, -277, -296, -409, -410, -532-534, -536, -537 (July 2000); *Certain Pipe and Tube from Argentina, Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey*, USITC Pub. 3867, Inv. Nos. 701-TA-253, 731-TA-132, -252, -271, -273, -409, -410, -532-534, -536 (July 2006); *Certain Circular Welded Pipe and Tube from Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey*, USITC Pub. 4333, Inv. Nos. 701-TA-253, 731-TA-132, -252, -271, -273, -532-534, -536 (June 2012); *Certain Circular Welded Pipe and Tube from Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey*, USITC Pub. 4754, Inv. Nos. 701-TA-253, 731-TA-132, -252, -271, -273, -532-534, -536 (Jan. 2018).

Moreover, § 1517 does not entitle importers to "reasonable notice" that their merchandise is within the scope of the AD order that the importer is alleged to have evaded.  See 19 U.S.C. § 1517

Reading the lack of exclusionary language in the *Order* alongside the lack of a "reasonable notice" requirement in the evasion statute, the court concludes that the decision of Customs to set the effective date of the evasion determination at October 18, 2018, the start date for the period of investigation for the evasion inquiry, was not arbitrary, capricious or otherwise not in accordance with the law.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that plaintiff's motion for judgment on the agency record is **DENIED**, and Customs' determination of evasion is sustained.  Judgment will enter accordingly.

/s/     Timothy M. Reif
Timothy M. Reif, Judge

Dated: September 25, 2025
New York, New York